[Cite as *State v. Horne*, 2011-Ohio-1901.]

STATE OF OHIO )  IN THE COURT OF APPEALS
)ss:  NINTH JUDICIAL DISTRICT
COUNTY OF SUMMIT )

STATE OF OHIO  C.A. No.  25238

    Appellee

    v.  APPEAL FROM JUDGMENT
ENTERED IN THE
MARSHAWN LYNDELL LORE HORNE  COURT OF COMMON PLEAS
COUNTY OF SUMMIT, OHIO
    Appellant  CASE No.  CR 08 08 2603

DECISION AND JOURNAL ENTRY

Dated: April 20, 2011

CARR, Judge.

{¶1} Appellant, Marshawn Horne, appeals his conviction out of the Summit County Court of Common Pleas. This Court affirms, in part, and reverses, in part.

I.

{¶2} On June 23, 2008, a complaint was filed in the Summit County Juvenile Court, alleging that Horne was a delinquent child by reason of aggravated robbery in violation of R.C. 2911.01(A), a felony of the first degree if committed by an adult. After a hearing, the juvenile court found that probable cause existed to show that Horne brandished a firearm during the course of an aggravated robbery. The juvenile court then transferred the case to the Summit County Court of Common Pleas, General Division, pursuant to R.C. 2152.10, for further proceedings.

{¶3} The Grand Jury indicted Horne on one count of aggravated robbery in violation of R.C. 2911.01(A)(1), a felony of the first degree, as well as a gun specification in violation of

R.C. 2941.145; one count of having weapons while under disability in violation of R.C. 2923.13(A)(2), a felony of the third degree; and one count of grand theft in violation of R.C. 2913.02(A)(1)/(4), a felony of the fourth degree. Horne pleaded not guilty to the charges.

{¶4} On October 30, 2008, Horne filed a notice of alibi, asserting that he was at home during the commission of the alleged offenses. On November 10, 2008, the State filed its notice of intent to use other acts evidence pursuant to Evid.R. 404(B) and R.C. 2945.59. The State moved for an order allowing it to present evidence of Horne's prior convictions for aggravated robbery with a handgun and kidnapping. Prior to trial, the trial court issued a preliminary ruling, indicating that evidence of Horne's prior conviction would be admissible. Defense counsel then made a motion in limine to exclude evidence of Horne's "street name" or nickname "Killer." After hearing the arguments of counsel, the trial court issued a preliminary ruling that the State could not introduce evidence of Horne's street name.

{¶5} The matter proceeded to trial. During opening statements, Horne objected to the State's characterization that Horne "failed [a stipulated] polygraph examination." Horne moved for a mistrial which the trial court denied. At the conclusion of trial, the jury found Horne guilty of all three counts and the gun specification. The trial court sentenced Horne to an aggregate term of nine years in prison. Horne filed a timely appeal, raising seven assignments of error for review.

II.

**ASSIGNMENT OF ERROR I**

"TRIAL COURT ERRED AND COMMITTED PLAIN ERROR BY ALLOWING THE PROSECUTOR TO INTRODUCE EVIDENCE ABOUT PRIOR, SEPARATE CRIMINAL CONDUCT IN VIOLATION OF OHIO RULES OF EVIDENCE 403 AND 404."

{¶6} Horne argues that the trial court erred by admitting evidence of his prior criminal conduct. This Court disagrees.

{¶7} Horne argues that the trial court committed plain error because defense counsel failed to object contemporaneously to the possible error at trial. Crim.R. 52(B) permits a court to notice plain errors or defects which affect substantial rights although they have not been brought to the attention of the court. This Court reviews an issue for plain error in cases where the appellant has otherwise forfeited the issue on appeal by failing to raise it below at a time when the trial court had the opportunity to correct the alleged error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶6. In this case, Horne objected to the admission of evidence of his prior conviction immediately prior to trial. The trial court issued a preliminary ruling indicating its inclination to admit such evidence. Horne renewed his objection immediately upon the State's questioning of Detective John Bell regarding the prior conviction. The State overruled Horne's objection and allowed Detective Bell to testify regarding the circumstances of the prior criminal conduct. By objecting at a time during which the trial court had the opportunity to correct the alleged error, Horne preserved the issue for appeal. Under the circumstances, we decline to review the issue for plain error. See *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12 (stating that "notice of plain error is to be taken with utmost caution and only to prevent a manifest miscarriage of justice[.]") This Court, therefore, will review the assigned error pursuant to the applicable standard of review.

{¶8} Evid.R. 404(B) states: "Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." The Ohio Supreme

Court has held that "[t]he admission of such evidence lies within the broad discretion of the trial court, and a reviewing court should not disturb evidentiary decisions in the absence of an abuse of discretion that has created material prejudice." *State v. Diar*, 120 Ohio St.3d 460, 2008-Ohio-6266, at ¶66, citing *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, at ¶62. This Court has typically applied this standard of review in regard to the admission of other acts evidence, most recently in *State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, at ¶ 19-20; see, also, *State v. Halsell*, 9th Dist. No. 24464, 2009-Ohio-4166, at ¶10-19; *State v. Stevenson*, 9th Dist. No. 24408, 2009-Ohio-2455, at ¶22-27; but, see, *State v. Morris*, 9th Dist. No. 09CA0022-M, 2010-Ohio-4282, at ¶13 (applying a de novo standard of review). Although this Court has veered in recent weeks from applying the abuse of discretion standard of review, see *State v. Thomas*, 9th Dist. No. 10CA009756, 2011-Ohio-1629, at ¶10, we note that we are duty bound to follow the precedent established by the Ohio Supreme Court, and we do so now. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons v. Ohio State Med. Bd.* (1993), 66 Ohio St.3d 619, 621. When applying the abuse of discretion standard, this Court may not substitute its judgment for that of the trial court. Id.

{¶9} While the exceptions in Evid.R. 404(B) which allow the admission of "other acts" evidence "must be construed against admissibility, and the standard for determining admissibility of such evidence is strict[,]" a reviewing court's "inquiry is confined to determining whether the trial court acted unreasonably, arbitrarily, or unconscionably in deciding the evidentiary issues[.]" (Internal citations and quotations omitted.) *Conway* at ¶61-62. Furthermore, this

Court has repeatedly stated that "this strict admissibility standard must be considered contemporaneously with the fact that the trial court occupies a superior vantage in determining the admissibility of evidence." (Internal quotations omitted.) *State v. Ristich*, 9th Dist. No. 21701, 2004-Ohio-3086, at ¶12, citing *State v. Ali* (Sep. 9, 1998), 9th Dist. No. 18841, citing *State v. Rutledge* (Nov. 19, 1997), 9th Dist. No. 96CA006619.

{¶10} Horne argues that the trial court erred by admitting unduly prejudicial testimony regarding his prior conviction for aggravated robbery. The State admitted a certified copy of Horne's prior conviction of aggravated robbery and then elicited testimony about the circumstances of the prior conviction. Horne is not contesting the admission of his prior aggravated robbery. The trial court did not abuse its discretion by admitting testimony regarding the fact of Horne's prior conviction because it was relevant and necessary to proving a necessary element of the charge of having weapons while under disability. See R.C. 2923.13(A)(2) (requiring proof of indictment, conviction, or adjudication as a delinquent child for the commission of an offense that, if committed by an adult, would be a felony offense of violence). Because evidence of the requisite prior conviction is necessary to establish the necessary elements of the charge of having weapons while under a disability, the admission of the certified copy of Horne's prior juvenile adjudication did not constitute error.

{¶11} Horne's main contention though is that the trial court erred by admitting testimony regarding the underlying facts and circumstances of his prior conviction. Crim.R. 52(A) provides that "[a]ny error, defect, irregularity, or variance which does not affect substantial rights shall be disregarded." Horne renewed his objection regarding the admissibility of other acts evidence during Detective John Bell's testimony but not during Detective Richard Morrison's testimony. The evidence to which Horne objected merely provided the factual

background to establish how the police developed Horne as a suspect in this case, and did not implicate his character. See *State v. Newcomb* (Nov. 27, 2001), 3d Dist. No. 8-01-07. To the extent that the trial court may have erred in admitting details of the facts underlying his prior conviction for aggravated robbery in violation of Evid.R. 404(B), any error was harmless.

{¶12} Detective Bell testified that he investigated an aggravated robbery which occurred in December 2006. He testified that a citizen, Rodney Kelly, gave him information that someone whom he only knew as "Killer" was "possibly involved" in an armed robbery that occurred at Dave's Supermarket, in Akron, approximately one-half mile from Horne's home. Detective Bell testified that he developed Horne as a suspect in the 2006 incident based on Mr. Kelly's report. Detective Richard Morrison, who was assigned to investigate the instant aggravated robbery, testified that a citizen, again Rodney Kelly, informed him that he read about the armed theft of a vehicle in the newspaper. Detective Morrison testified that Mr. Kelly reported that he had seen "Killer" driving a car matching the description of the stolen vehicle one day earlier. Detective Morrison testified that Mr. Kelly reported that he was surprised to see "Killer" because he did not believe he had yet been released from youth prison for the 2006 aggravated robbery. Having received information that the same perpetrator was involved in both the 2006 and instant aggravated robberies, Detective Morrison testified that he worked with Detective Bell to develop Horne as a suspect.

{¶13} Horne fails to explain how the admission of information regarding the circumstances of the 2006 aggravated robbery affected any substantial right. He does not allege that the outcome of the trial would have been different but for the admission of the challenged evidence. Instead, he alleges that the evidence was not relevant to prove identity, something he claims was not at issue in this case. Horne, however, had filed a notice of alibi. He defended,

not on the basis that the victim was not robbed at gunpoint, but rather that he was not the perpetrator because he was at another location at the time of the commission of the offense. Accordingly, identity of the perpetrator was squarely at issue, and the detectives' testimony regarding the 2006 aggravated robbery was relevant to develop the identity of the suspect in the instant case.

{¶14} Moreover, Horne does not allege that the admission of the challenged evidence violated any constitutional right. Nevertheless, even where the admission of evidence constitutes constitutional error, the error is harmless "if the remaining evidence, standing alone, constitutes overwhelming proof of defendant's guilt." *State v. Williams* (1983), 6 Ohio St.3d 281, at paragraph six of the syllabus. In this case, Detective Morrison testified that he was able to develop Horne as a suspect based on the information Mr. Kelly reported to the police regarding both the 2006 and instant aggravated robberies. Detective Morrison testified that he was, therefore, able to create a photo array including Horne's picture for presentation to the victim. The victim, Douglas Sutton, testified that he identified Horne from the photo array immediately as his attacker. Detective Morrison confirmed the victim's immediate identification of Horne as his attacker. Under the circumstances, the admission of evidence of the facts underlying Horne's prior conviction, if erroneous, constituted harmless error. Horne's first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

"TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR, BY ACCEPTING JOURNAL ENTRIES OF DEFENDANT'S PRIOR CONVICTIONS AS EVIDENCE."

{¶15} Horne argues that the trial court erred by admitting into evidence a certified copy of a journal entry of his prior convictions in lieu of his stipulation to his prior conviction. This Court disagrees.

{¶16} Horne urges us to adopt the holding in *Old Chief v. United States* (1997), 519 U.S. 172, 174, which states that a trial court errs when it admits the full record of conviction in lieu of the criminal defendant's stipulation to the existence of the prior conviction "when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction." This Court has repeatedly rejected the application of the holding in *Old Chief* because that case interpreted a federal statute. See *State v. Peasley*, 9th Dist. No. 25062, 2010-Ohio-4333, at ¶12, citing *State v. Williams*, 9th Dist. No. 22877, 2006-Ohio-4720, at ¶21; *State v. Kole* (June 28, 2000), 9th Dist. No. 98CA007116, overruled on other grounds by *State v. Kole* (2001), 92 Ohio St.3d 303. Horne has presented no compelling argument to cause this Court to deviate from our prior precedent. Accordingly, the trial court did not err when it admitted into evidence journal entries of Horne's prior conviction. Horne's second assignment of error is overruled.

## ASSIGNMENT OF ERROR III

"THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN DENYING DEFENDANT'S MOTION FOR MISTRIAL."

{¶17} Horne argues that the trial court erred by denying his motion for mistrial. This Court disagrees.

{¶18} This Court adheres to well-established precedent: "The essential inquiry on a motion for mistrial is whether the substantial rights of the accused are adversely affected. Great deference is afforded to a trial court's decision regarding a motion for mistrial[.]" (Internal citations omitted.) *State v. Howes*, 9th Dist. No. 24665, 2010-Ohio-421, at ¶11. We recognize

that the trial court judge maintains the best position to determine whether the declaration of a mistrial is warranted under the circumstances as they have arisen in the courtroom. *State v. Kyle*, 9th Dist. No. 24655, 2010-Ohio-4456, at ¶25, citing *State v. Glover* (1988), 35 Ohio St.3d 18, 19; *State v. Ahmed*, 103 Ohio St.3d 27, 2004-Ohio-4190, at ¶92. Accordingly, "[t]his court will not second-guess such a determination absent an abuse of discretion." *Ahmed* at ¶92. An abuse of discretion is more than an error of judgment; it means that the trial court was unreasonable, arbitrary, or unconscionable in its ruling. *Blakemore*, 5 Ohio St.3d at 219. An abuse of discretion demonstrates "perversity of will, passion, prejudice, partiality, or moral delinquency." *Pons*, 66 Ohio St.3d at 621.

{¶19} Horne argues that the trial court abused its discretion by failing to declare a mistrial after the State asserted in its opening statement that Horne "failed" a polygraph examination. He does not take issue with the trial court's direction to the State that it instead "indicate that the polygraph results indicate deception was present[.]"

{¶20} Horne cites to the American Heritage College Dictionary (3d Ed. 1993), to define "fail" as to "prove deficient or lacking, perform ineffectively or inadequately *** To be unsuccessful[.]" Horne argues that a reasonable person would not recognize that by asserting that Horne "failed" the polygraph, the State meant merely to indicate that the results indicated that deception was detected. "Deception" is defined as "the act of deceiving." Merriam-Webster's Collegiate Dictionary (11th Ed. 2004), 322. "Deceive" means "to cause to accept as true or valid what is false or invalid." Id. at 321.

{¶21} A polygraph examination is colloquially recognized as a "lie detector test." It is generally understood that, if one "fails" such a test, he has not told the truth. In other words, the examinee attempted to cause the examiner to accept as true what the examinee knows to be false.

This Court agrees with the State that any reasonable person would accord the same meaning to the assertions that one "failed" a polygraph examination and that "the polygraph results indicate deception was present[,]" i.e., that the examinee lied in his responses.

**{¶22}** Horne argues that the trial court should have cured the harm by instructing the jury to disregard the State's statement that he "failed" the polygraph examination. Because he did not object to the statement that "deception was present" in the results of the polygraph examination, however, the jury nevertheless would have understood that Horne had not been truthful. Although the better practice by the State would be to indicate that deception was indicated on the polygraph examination, Horne fails to explain how it was "highly prejudicial" for the jury to hear that he "failed" the polygraph examination when the understanding was that he was deceitful during the examination. Under the circumstances, this Court cannot say that the trial court abused its discretion when it denied Horne's motion for mistrial. Horne's third assignment of error is overruled.

## ASSIGNMENT OF ERROR IV

"[THE] TRIAL COURT COMMIT[T]ED REVERSIBLE AND PLAIN ERROR WHEN IT PERMITTED INTO EVIDENCE TESTIMONY REGARDING RESULTS OF DEFENDANT'S POLYGRAPH EXAM."

**{¶23}** Horne argues that the trial court erred by admitting testimony regarding the results of his polygraph examination because the results were not presented for purposes of corroboration or impeachment. This Court disagrees.

**{¶24}** Pursuant to Crim.R. 52(B), "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error "must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings." *State v. Tichon* (1995), 102 Ohio

App.3d 758, 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *State v. Bray*, 9th Dist. No. 03CA008241, 2004-Ohio-1067, at ¶12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Horne has established that the outcome of the trial clearly would have been different but for the alleged error. *State v. Kobelka* (Nov. 7, 2001), 9th Dist. No. 01CA007808, citing *State v. Waddell* (1996), 75 Ohio St.3d 163, 166.

{¶25} The Ohio Supreme Court has long held that, as long as both the State and the defendant have "sign[ed] a written stipulation providing for defendant's submission to the test and for the subsequent admission at trial of the graphs and the examiner's opinion thereon on behalf of either defendant or the state[,]" then the trial court retains broad discretion to admit the results of a polygraph examination for purposes of corroboration or impeachment. *State v. Souel* (1978), 53 Ohio St.2d 123, syllabus; see, also, *State v. Jackson* (1991), 57 Ohio St.3d 29, 37. More recently, the high court has stated:

> "We have not adopted the unrestrained use of polygraph results at trial, and polygraphs themselves remain controversial. Only if there is a stipulation between the parties do we allow the admission of polygraph results at trial, and then for corroboration or impeachment only." *In re D.S.*, 111 Ohio St.3d 361, 2006-Ohio-5851, at ¶13, citing *Souel*, supra.

{¶26} Horne argues, without citation to any authority, that testimony regarding the results of the polygraph examination may be admitted only if it corroborates the defendant's testimony. Specifically, Horne argues that the polygraph examiner's testimony "could not have been offered for the purposes of corroboration or impeachment as Defendant had not taken the stand to testify in his defense." There is no requirement that the results of the polygraph examination be used to corroborate or impeach only the criminal defendant's testimony. The Ohio Supreme Court recognized the admissibility of the results of a polygraph examination

where such evidence corroborated the testimony of earlier witnesses for the State and before the defendant testified. *Souel*, 53 Ohio St.2d at 134 (concluding that "the requisite conditions for admissibility of polygraph evidence were met [because] [t]here was substantial evidence tending to indicate that appellant committed the offenses for which he was convicted, and the polygraph evidence was thus merely corroborative."). Accordingly, Horne's argument that evidence of the results of a polygraph examination is only admissible to corroborate the criminal defendant's testimony is not well taken.

{¶27} In this case, the victim identified Horne and testified that he pulled a gun on him and took his car as he was attempting to deliver food. Sergeant Ken Butler subsequently testified that he administered a polygraph examination to Horne after Horne and the State agreed to the administration of the examination and jointly stipulated to the admissibility of its results. Sergeant Butler testified that Horne responded "No" to each of the following questions: (1) "Did you rob the Euro Gyro delivery man?" (2) "Did you pull a gun on the Euro Gyro delivery man?" and (3) "Did you steal the Euro Gyro delivery man's car?" The results indicated deception. Accordingly, the testimony regarding the results of the polygraph examination was properly admitted to corroborate the victim's testimony.

{¶28} Horne further argues that the trial court erred by admitting into evidence the State's reference to the results of the polygraph examination during opening statements. "It is well settled that statements made by counsel in opening statements and closing arguments are not evidence." *State v. Frazier* (1995), 73 Ohio St.3d 323, 338; see, also, *U.S. Aviation Underwriters, Inc. v. B.F. Goodrich Co.*, 149 Ohio App.3d 569, 2002-Ohio-5429, at ¶28. The trial court expressly instructed the jury to that effect, and the "jury is presumed to follow the

instructions of the trial court."  Id., citing *State v. Raglin* (1998), 83 Ohio St.3d 253, 264. Accordingly, Horne's argument is this regard is not well taken.

**{¶29}**  Horne's fourth assignment of error is overruled.

## ASSIGNMENT OF ERROR V

"[THE] TRIAL COURT COMMITTED REVERSIBLE AND PLAIN ERROR WHEN IT REVERSED ITS PRIOR RULING AND PERMITTED THE PROSECUTOR TO REFER TO DEFENDANT AS 'KILLER[.]'"

**{¶30}**  Horne argues that the trial court erred by allowing the State to refer to Horne by his alias name "Killer."  Specifically, he argues that the nickname was irrelevant and highly prejudicial.  This Court disagrees.

**{¶31}**  Prior to trial, defense counsel orally moved to prevent the State from referring to Horne by the nickname "Killer."  The trial court issued a preliminary ruling, prohibiting the State from referencing the nickname, reasoning that the witnesses could reasonably identify the defendant without reference to his nickname.  The trial court revisited the issue after the State informed it that the citizen (Rodney Kelly) who identified "Killer" as the perpetrator was refusing to testify.  The trial court questioned Mr. Kelly on the record outside the presence of the jury.  Mr. Kelly admitted that he stopped by the detective bureau when he was at the police station on other business and informed a detective that he thought he saw someone driving a stolen vehicle.  He repeatedly asserted, however, that he could not identify the driver.  The trial court declared Mr. Kelly as a hostile witness and ordered that the State would be allowed to refer to Horne by his nickname in order to establish how Horne was identified as a suspect in this case.  The State began to question Mr. Kelly, referencing the nickname "Killer."  Horne did not object.  Accordingly, this Court reviews only for plain error.

**{¶32}** This Court has long held that "an appellate court will not consider as error any issue a party was aware of but failed to bring to the trial court's attention[]" at a time when the trial court might have corrected the error. *State v. Dent*, 9th Dist. No. 20907, 2002-Ohio-4522, at ¶6. "[F]orfeiture is a failure to preserve an objection[.] *** [A] mere forfeiture does not extinguish a claim of plain error under Crim.R. 52(B)." (Internal citations omitted.) *State v. Payne*, 114 Ohio St.3d 502, 2007-Ohio-4642, at ¶23.

**{¶33}** As we previously noted, Crim.R. 52(B) states that "[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court." To constitute plain error, the error "must be obvious and have a substantial adverse impact on both the integrity of, and the public's confidence in, the judicial proceedings." *Tichon*, 102 Ohio App.3d at 767. A reviewing court must take notice of plain error only with the utmost caution, and only then to prevent a manifest miscarriage of justice. *Bray* at ¶12. This Court may not reverse the judgment of the trial court on the basis of plain error, unless Horne has established that the outcome of the trial clearly would have been different but for the alleged error. *Kobelka*, supra, citing *Waddell*, 75 Ohio St.3d at 166.

**{¶34}** "An appellate court applies an abuse of discretion standard when reviewing a trial court's decision to admit evidence over an objection that it is irrelevant, substantially more prejudicial than probative, or improper other acts evidence." *State v. Brown*, 9th Dist. No. 25287, 2011-Ohio-1041, at ¶20.

**{¶35}** Horne fails to cite to the portions of the record which would support his arguments. He cites merely to several portions of the transcript evidencing the discussion between counsel and the court outside the presence of the jury. As we have stated on many occasions: "'It is the duty of the appellant, not this court, to demonstrate his assigned error

through an argument that is supported by citations to legal authority and facts in the record.'" *State v. Ashby*, 9th Dist. No. 06CA0077-M, 2007-Ohio-3118, at ¶26, quoting *State v. Taylor* (Feb. 9, 1999), 9th Dist. No. 2783-M; see, also App.R. 16(A)(7). "'It is not the function of this court to construct a foundation for [an appellant's] claims; failure to comply with the rules governing practice in the appellate courts is a tactic which is ordinarily fatal.'" *Ashby* at ¶26, quoting *Kremer v. Cox* (1996), 114 Ohio App.3d 41, 60. App.R. 12(A)(2) allows this Court to disregard any assignment of error in which the appellant "fails to identify in the record the error on which the assignment of error is based[.]"

{¶36} In this case, without citing to the relevant portions of the record, Horne argues that the State's reference to the nickname "Killer" was "highly prejudicial and inflammatory" and not relevant to establishing identity.

{¶37} Horne argues that allowing the State to use his nickname "Killer" was prejudicial because it might have led the jury to believe that he "acted in conformity with that name." Horne, however, was not charged with a homicide crime. He does not explain how such a nickname might have linked him to the underlying charges. Moreover, he does not argue that, but for the State's reference to the nickname "Killer," the results of the trial would have been different.

{¶38} Horne further argues that the nickname was not relevant to the issue of identity, in particular because identity was not at issue at trial. Horne, however, was defending on the basis of an alibi which he believed established his presence at home, while someone else was committing the aggravated robbery elsewhere. We earlier discussed how Horne's notice of alibi rendered the identity of the perpetrator squarely at issue.

{¶39}   After asserting that identity was not at issue, Horne immediately conceded that it was and that it could have been proved without reference to the nickname because "there was [a] victim who was willing and able to identify the Defendant." This argument ignores the fact that Horne was only developed as a suspect because a witness who only knew Horne as "Killer" reported his involvement.

{¶40}   Detective Morrison, without reference to any nickname, testified that Horne was developed as a suspect in this case only because Mr. Kelly reported that he heard his daughter call out by nickname to someone Mr. Kelly knew to have served time for a prior aggravated robbery.   According to the detective, Mr. Kelly reported that he only knew Horne by his nickname and he recognized him as the person he saw driving a car which matched the description of a recently recovered stolen vehicle.   Prior to being called to the stand to testify, Mr. Kelly became uncooperative and asserted that he had no knowledge of any facts surrounding this case, despite his prior thorough report to police.   Detective Morrison testified that it was Mr. Kelly's knowledge of "Killer" which allowed the police to develop Horne as a suspect and which ultimately allowed the victim to identify his assailant.   Only after Mr. Kelly refused to cooperate did the trial court allow the State to reference the nickname "Killer" in an effort to corroborate Detective Morrison's testimony regarding the development of this case for prosecution. Significantly, the State never asked Mr. Kelly whether the defendant was the person he knew as "Killer."   Instead, the State merely inquired whether Mr. Kelly had reported that his daughter called out to "Killer," that he had seen "Killer" in a blue Dodge Stratus, and that he knew "Killer" had been involved in a prior incident in 2006 at Dave's Supermarket.   Under the circumstances, this Court cannot say that the trial court abused its discretion by allowing the State to use the name "Killer" while cross-examining a hostile witness who only knew the

defendant by that nickname.  In the absence of any error by the trial court, Horne's argument that the court committed plain error must fail.  Horne's fifth assignment of error is overruled.

## ASSIGNMENT OF ERROR VI

"DEFENDANT'S CONVICTION WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE[.]"

**{¶41}**  Horne argues that his conviction was against the manifest weight of the evidence. This Court disagrees.

**{¶42}**  Horne commingles the legal concepts of weight of the evidence and sufficiency of the evidence, at one point asserting that this Court must evaluate the weight of the evidence pursuant to the test set forth in *State v. Jenks* (1991), 61 Ohio St.2d 259, paragraph two of the syllabus, regarding an analysis of the sufficiency of the evidence.  Because it is unclear whether Horne challenges both the weight and sufficiency of the evidence, this Court shall address both.

**{¶43}**  A review of the sufficiency of the State's evidence and the manifest weight of the evidence adduced at trial are separate and legally distinct determinations.  *State v. Gulley* (Mar. 15, 2000), 9th Dist. No. 19600.  "While the test for sufficiency requires a determination of whether the state has met its burden of production at trial, a manifest weight challenge questions whether the state has met its burden of persuasion."  Id., citing *State v. Thompkins* (1997), 78 Ohio St.3d 380, 390 (Cook J., concurring).  When reviewing the sufficiency of the evidence, this Court must review the evidence in a light most favorable to the prosecution to determine whether the evidence before the trial court was sufficient to sustain a conviction.  *Jenks*, 61 Ohio St.3d at 279.

> "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt.  The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution,

any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." Id. at paragraph two of the syllabus.

{¶44} A determination of whether a conviction is against the manifest weight of the evidence, however, does not permit this Court to view the evidence in the light most favorable to the State to determine whether the State has met its burden of persuasion. *State v. Love*, 9th Dist. No. 21654, 2004-Ohio-1422, at ¶11. Rather,

> "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten* (1986), 33 Ohio App.3d 339, 340.

> "Weight of the evidence concerns the tendency of a greater amount of credible evidence to support one side of the issue more than the other. *Thompkins*, 78 Ohio St.3d at 387. Further when reversing a conviction on the basis that it was against the manifest weight of the evidence, an appellate court sits as a 'thirteenth juror,' and disagrees with the factfinder's resolution of the conflicting testimony. Id." *State v. Tucker*, 9th Dist. No. 06CA0035-M, 2006-Ohio-6914, at ¶5.

This discretionary power should be exercised only in exceptional cases where the evidence presented weighs heavily in favor of the defendant and against conviction. *Thompkins*, 78 Ohio St.3d at 387.

{¶45} Horne was charged with aggravated robbery in violation of R.C. 2911.01(A)(1), which states that "[n]o person, in attempting or committing a theft offense, as defined in section 2913.01 of the Revised Code, or in fleeing immediately after the attempt or offense, shall *** [h]ave a deadly weapon on or about the offender's person or under the offender's control and either display the weapon, brandish it, indicate that the offender possesses it, or use it[.]" Grand theft in violation of R.C. 2913.02 constitutes a "theft offense." R.C. 2913.01(K)(1). The alleged deadly weapon in this case was a firearm.

{¶46}  Horne was charged with a firearm specification in conjunction with the charge of aggravated robbery.  R.C. 2941.145 requires proof beyond a reasonable doubt that "the offender had a firearm on or about the offender's person or under the offender's control while committing the offense and displayed the firearm, brandished the firearm, indicated that the offender possessed the firearm, or used it to facilitate the offense."  A "firearm" is "any deadly weapon capable of expelling or propelling one or more projectiles by the action of an explosive or combustible propellant.  'Firearm' includes an unloaded firearm, and any firearm that is inoperable but that can readily be rendered operable."  R.C. 2923.11(B)(1).

{¶47}  Horne was charged with having weapons while under disability in violation of R.C. 2923.13(A)(2), which states: "Unless relieved from disability as provided in section 2923.14 of the Revised Code, no person shall knowingly acquire, have, carry, or use any firearm or dangerous ordnance, if *** [t]he person is under indictment for or has been convicted of any felony offense of violence or has been adjudicated a delinquent child for the commission of an offense that, if committed by an adult, would have been a felony offense of violence[.]"  Both kidnapping and aggravated robbery are offenses of violence.  R.C. 2901.01(A)(9).  R.C. 2901.22(B) states that "[a] person acts knowingly, regardless of his purpose, when he is aware that his conduct will probably cause a certain result or will probably be of a certain nature.  A person has knowledge of circumstances when he is aware that such circumstances probably exist."

{¶48}  Horne was charged with grand theft in violation of R.C. 2913.02(A)(1)/(4) which states that "[n]o person, with purpose to deprive the owner of property or services, shall knowingly obtain or exert control over either the property or services *** [w]ithout the consent of the owner or person authorized to give consent[, or] [b]y threat."  In addition, R.C.

2913.02(B)(5) states that "[i]f the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle[.]"  Pursuant to R.C. 2901.22(A): "A person acts purposely when it is his specific intention to cause a certain result, or, when the gist of the offense is a prohibition against conduct of a certain nature, regardless of what the offender intends to accomplish thereby, it is his specific intention to engage in conduct of that nature."  "Deprive" is defined, in part, as "[d]ispos[ing] of property so as to make it unlikely that the owner will recover it[, or] [a]ccept[ing], us[ing], or appropriate[ing] money, property, or services, with purpose not to give proper consideration in return for the money, property, or services, and without reasonable justification or excuse for not giving proper consideration."  R.C. 2913.01(C)(2)-(3).

Sufficiency of the evidence

{¶49}  Officer Robert Patrick of the Akron Police Department ("APD") testified that he was on patrol on June 7, 2008, when he was dispatched at approximately 11:30 p.m., to Black Street in Akron, on a robbery call.  The officer testified that he was subsequently redirected to the Euro Gyro restaurant on Exchange Street because the robbery victim had gone there.  Officer Patrick testified that the victim reported that he was attempting to deliver food to 450 Black Street when two black males approached him and told him the food order was incorrect.  The officer testified that the victim reported that one of the men brandished a gun and took the victim's car.  Officer Patrick testified that other officers were dispatched to 450 Black Street, which appeared to be an unoccupied residence, to look for suspects but none were found.

{¶50}  Douglas Sutton testified that he was attempting to deliver a food order from Euro Gyro to 450 Black Street at 11:30 p.m. on June 7, 2008, when a man standing in front of that house informed him that the order was wrong.  Mr. Sutton continued to testify as follows.  Another man approached and offered to pay for the food, but Mr. Sutton offered to give it to the

two men for free. As Mr. Sutton turned to return to his car (a 2005 Dodge Stratus), one of the men pulled out a gun and told Mr. Sutton to "lay it down." Both men jumped in Mr. Sutton's car and drove away, the man with the gun driving. Mr. Sutton ran away and called 911.

**{¶51}** Mr. Sutton testified that he informed Detective Morrison that he would recognize the man who pulled a gun on him and took his car because he spent 3-5 minutes with him at the scene. When Detective Morrison showed Mr. Sutton a photo array of suspects, the victim identified Horne as the perpetrator immediately.

**{¶52}** Detective Don Frost of the APD crime scene unit testified that on June 11, 2008, he processed a stolen vehicle which had recently been recovered. He testified the vehicle was a Dodge Stratus that contained a piece of mail from the bureau of motor vehicles which was addressed to Mr. Sutton. Detective Frost testified that he dusted the vehicle for fingerprints but was not surprised that he did not find any useable prints because frequently touched surface areas, such as those inside and outside a car, rarely provide definitive, useable prints. The detective testified that the lack of a person's fingerprints inside a vehicle does not mean that the person had not been there. Detective Frost testified that he found no hair samples in the car and that he did not swab the car for traces of DNA. He testified that it is standard practice not to swab for DNA in areas of common contact by multiple people because it is not possible to separate more than two DNA standards to determine a known donor.

**{¶53}** Detective Richard Morrison of the APD testified that this case was assigned to him after the victim's car was recovered. He testified that on June 9, 2008, he spoke with the victim who reported that he was robbed at gunpoint by two black males. The detective testified that the car was found on Clark Street in Akron, near the scene of the incident.

{¶54} Detective Morrison testified as follows as to how the police developed Horne as a suspect in this case. Rodney Kelly came to the police station on June 10, 2008, and stated that he had read in the newspaper about a stolen vehicle which had recently been recovered. Mr. Kelly reported that he saw someone driving the stolen vehicle the night before it was recovered. Mr. Kelly reported that he was with his daughter when she called out to someone by a nickname he recognized. Knowing that that person had been involved in a criminal incident one to two years earlier, and believing that that person was still in jail, Mr. Kelly looked and recognized the man he knew only by that nickname. Mr. Kelly reported the incident because he did not believe that it was possible that that man owned the newer car he was driving. Detective Morrison was familiar with the prior criminal incident that Mr. Kelly referenced, so he contacted the detective who investigated the prior case. Detective Morrison reviewed the prior case file to identify the defendant in that case and put together a photo array containing that defendant's photograph. Horne was the defendant involved in the prior incident which Mr. Kelly referenced in his report. When Detective Morrison presented the photo array to Mr. Sutton, the victim identified Horne as the person who stole his car at gunpoint.

{¶55} Rodney Kelly testified as a hostile witness. In an effort to elicit testimony which would corroborate Detective Morrison's testimony, the State asked very factually specific questions. Nevertheless, Mr. Kelly denied reporting that his daughter called out to "Killer" which caught his attention because he knew an individual who went by the nickname "Killer" because of that individual's involvement in a prior robbery at Dave's Supermarket. Mr. Kelly testified that he did not recall telling the police that the person he saw driving was the same person about whom he had given information to police regarding a prior robbery. In fact, he testified that he did not know what the assistant prosecutor was talking about when she

mentioned a 2006 robbery. Mr. Kelly denied telling the assistant prosecutor that he was afraid to testify. He testified that he was only in court because the assistant prosecutor had called his place of employment and threatened him, and that he was not in court pursuant to a subpoena. The transcript of docket and journal entries compiled by the clerk of courts indicates that on February 25, 2009, the assistant prosecutor issued a subpoena for Mr. Kelly's appearance at trial which was to begin on March 2, 2009.

{¶56} Detective Morrison again testified in rebuttal to Mr. Kelly's testimony. Detective Morrison reiterated that Mr. Kelly contacted him on June 10, 2008, and reported that he saw "Killer" in a blue Dodge that the newspaper had reported as stolen. The detective testified that Mr. Kelly reported that his daughter called out to "Killer" which caused him to look because he believed that "Killer" was still in jail because of his involvement in a robbery at Dave's Supermarket a year and a half earlier.

{¶57} Nicole Walker, an assistant prosecutor, testified that she was originally assigned to this case until the case was transferred to a different courtroom. Ms. Walker testified that she interviewed various witnesses, including Rodney Kelly, for trial preparation. She testified that Mr. Kelly told her that he recognized "Killer" when his daughter called out to someone. She testified that Mr. Kelly told her that he saw "Killer" in a car, later read a newspaper article about a stolen car, "and put two and two together and contacted the police."

{¶58} Detective John Bell of the APD testified that he was familiar with Horne because of Horne's involvement in a 2006 aggravated robbery at Dave's Supermarket, located approximately one-half mile from Horne's home. The detective described the area and testified that Horne's home is half-way between Dave's Supermarket and 450 Black Street. He testified that Horne was developed as a suspect in the 2006 aggravated robbery when Rodney Kelly came

forward and reported to the police that "Killer" was "possibly involved" in the incident. Detective Bell testified that, during a canvas of the area of the incident, a teenager on the street informed police that "Killer" was Horne's nickname. He testified that police records regarding the 2006 incident reference the nickname "Killer" in regard to Horne. The detective testified that Horne was arrested and ultimately adjudicated delinquent by reason of aggravated robbery for the 2006 incident. Detective Bell identified a certified copy of a journal entry evidencing Horne's delinquency adjudication and commitment to the Ohio Department of Youth Services for the charges of aggravated robbery and kidnapping. The detective confirmed that a delinquency adjudication and disposition constitutes a "conviction."

{¶59} Sergeant Ken Butler of the APD testified that he is a certified forensic polygraph examiner. He testified that Horne consented in writing to the administration of a polygraph examination. He also testified that both the State and Horne stipulated to the admissibility of the results of the examination. Sergeant Butler testified that he and Horne developed three relevant questions for the examination, specifically: (1) "Did you rob the Euro Gyro delivery man?" (2) "Did you pull a gun on the Euro Gyro delivery man?" (3) "Did you steal the Euro Gyro delivery man's car?" The sergeant testified that Horne responded "no" to each question. He testified that his findings were that there was "deception indicated."

{¶60} Sergeant Butler testified that, before he administers a polygraph examination, he conducts various interviews and evaluations to ensure that the examinee has no physical ailments or psychological conditions that would render the examinee unsuitable for a polygraph examination. He testified that he is not aware of any studies which indicate that teenagers are not suitable candidates for polygraph examinations. Sergeant Butler testified, in fact, that the only factors which would limit the reliability of the results are examining an unsuitable examinee

or allowing the administration of the examination by an inexperienced polygraph operator. He testified that an examinee's mere illness would not affect results. Sergeant Butler testified that, in any event, Horne did not indicate to him that he had been ill prior to the examination.

{¶61} Reviewing the evidence in a light most favorable to the State, this Court concludes that any rational trier of fact could have found the essential elements of the crimes of aggravated robbery and corresponding gun specification, having weapons while under disability, and grand theft were proved beyond a reasonable doubt. See *Jenks* at paragraph two of the syllabus.

{¶62} The State presented evidence that Mr. Sutton was robbed at gunpoint of his vehicle, a 2005 Dodge Stratus. There was evidence as to how the police were able to develop Horne as a suspect in the case. Mr. Sutton readily identified Horne as the perpetrator in a photo array. The results of the stipulated polygraph examination indicated deception when Horne denied any involvement in the crimes. The State presented evidence of Horne's prior conviction for aggravated robbery and kidnapping. Accordingly, the State presented sufficient evidence of the crimes.

Manifest weight of the evidence

{¶63} The State presented the testimony of the victim who identified Horne in a photo array as the person who pointed a gun at him and drove away in his car. Mr. Sutton testified that the gun was either a Highpoint 380 or Highpoint 9 mm, weapons with which he was familiar because he owned a Highpoint firearm. Detective Morrison testified that he developed Horne as a suspect, despite the absence of DNA or fingerprint evidence, based on a citizen's report to police that someone he knew only as "Killer" had been driving a car which matched the description of a stolen car which the police had recovered. Detective Morrison testified that he

was able to identify Horne as "Killer" because the citizen, Rodney Kelly, reported that he knew "Killer" from his involvement in a prior aggravated robbery in 2006. Detective Bell testified that Mr. Kelly reported "Killer's" involvement in the 2006 incident and that he was able to identify Horne as "Killer" based on information received from a teenager in the area who knew Horne. Detective Bell further identified the certified copy of Horne's juvenile adjudication and disposition for the 2006 offenses.

{¶64} Horne presented the testimony of four witnesses, including Horne who testified in his own defense.

{¶65} Raven Horne, Horne's 15-year old sister, testified that Horne was at home all evening on June 7, 2008. She testified that Horne was in bed asleep at 11:00 p.m. and that he asked to use the phone she was using some time between 11:00 p.m. and midnight. Raven testified that Horne used the phone for a minute then returned to bed.

{¶66} Deandra Jackson testified that she was dating Horne on June 7, 2008. She testified as to her phone number at that time.

{¶67} Racshel Horne, Horne's mother, testified that Horne returned home around 6 p.m. on Saturday, June 7, 2008, after playing basketball. She testified that Horne was wearing the shorts in which he sleeps around 9:20 p.m. She testified that around 11:00 p.m. she saw her son asleep in his bed while her daughter spoke to someone on the phone. Racshel testified that her phone bill reflects a call that Horne made at approximately one minute after midnight.

{¶68} Racshel testified that she took Horne to work around 9:00 a.m. on June 8, 2008. She testified that Horne does not have a driver's license and does not know how to drive.

{¶69} Horne testified in his own defense. He testified that he turned 18 years old on March 1, 2009. He admitted that he was involved in the offenses that took place at Dave's

Supermarket in December 2006, but he denied that he possessed a gun during the commission of those offenses.

{¶70} Horne testified that he played basketball most of the day on June 7, 2008. He testified that he returned home around 8:00 p.m., changed his clothes, brought some food up to his room, brought his dishes down to the kitchen, returned to his bedroom, and went to sleep around 11:00 p.m. Horne testified that he later got up to use the bathroom and call his girlfriend around midnight. He testified that he returned to bed when his girlfriend did not answer his call. Horne testified that his mother drove him to work the next morning. He testified that he does not know how to drive and that he never drove a blue 2005 Dodge Stratus.

{¶71} Horne testified that he agreed to submit to a polygraph examination, although he was taking anti-anxiety medication at the time of the administration of the examination. He admitted that he did not inform Sergeant Butler that he was on medication at the time of the polygraph examination; rather, he only told him that he had experienced some foot pain in the past couple years. Horne concluded his testimony by denying any role in the 11:30 p.m. aggravated robbery on June 7, 2008, at 450 Black Street.

{¶72} This Court will not overturn the trial court's verdict on a manifest weight of the evidence challenge only because the trier of fact chose to believe certain witness' testimony over the testimony of others. *State v. Crowe*, 9th Dist. No. 04CA0098-M, 2005-Ohio-4082, at ¶22.

{¶73} A review of the record indicates that this is not the exceptional case, where the evidence weighs heavily in favor of Horne. A thorough review of the record compels this Court to find no indication that the trial court lost its way and committed a manifest miscarriage of justice in convicting Horne of aggravated robbery and companion gun specification, having weapons while under disability, and grand theft. The weight of the evidence supports the

conclusion that, at approximately 11:30 p.m. on June 7, 2008, Horne pointed a gun at Mr. Sutton as he was attempting to deliver food, told him to "lay it down," and drove away in Mr. Sutton's Dodge Stratus. The victim identified Horne as the perpetrator after the police were able to develop Horne as a suspect due to citizen's report identifying the perpetrator as the same person he knew to have been involved in other criminal offenses in 2006. Evidence of his adjudication and disposition for kidnapping and aggravated robbery was admitted at trial. Horne's polygraph examination resulted in a finding that deception was indicated in regard to questions relating to his involvement in the instant offenses. In addition, the jury was in the best position to judge the credibility of the witnesses and could, therefore, discount as incredible Mr. Kelly's testimony that he knew nothing about the commission of the instant offenses. Moreover, the jury could reasonably discount as incredible the testimony of Horne, his sister, and his mother that he was at home all evening on June 7, 2008. The evidence established that Mr. Sutton was robbed at gunpoint at 11:30 p.m. and that Horne lived approximately one-half mile away from the scene of the incident, leaving plenty of time for Horne to drive home in time to make a phone call at one minute after midnight. Based on a review of the evidence, this Court concludes that Horne's convictions are not against the manifest weight of the evidence. Horne's sixth assignment of error is overruled.

## ASSIGNMENT OF ERROR VII

"DEFENDANT'S CONVICTION FOR GRAND THEFT, A FELONY OF THE FOURTH DEGREE, VIOLATED R.C. []2945.75(A)(2) AND STATE V. PELFREY, 113 OHIO ST.3D 422, [] 2007-OHIO-256, BECAUSE THE JURY VERDICT DID NOT INCLUDE THE DEGREE OF THE OFFENSE, NOR ANY AGGRAVATING ELEMENTS."

{¶74} Horne argues that the trial court erred in sentencing him to a felony of the fourth degree for the offense of grand theft. The State concedes error. This Court agrees.

**{¶75}** Horne did not raise this objection before the trial court. We previously stated, however, that

> "[w]hile Defendant failed to object below to this particular error, this type of error actually prejudices the State, not Defendant, and thus Defendant need not object below to preserve the issue on appeal." *State v. Goodwin*, 9th Dist. No. 23787, 2008-Ohio-783, at ¶21, quoting *State v. Davis*, 9th Dist. No. 21794, 2004-Ohio-3246, at ¶59, citing *State v. Gleason* (1996), 110 Ohio App.3d 240, 248.

**{¶76}** Horne was indicted on one count of grand theft in violation of R.C. 2913.02(A)(1)/(4), a felony of the fourth degree. R.C. 2913.02(B) differentiates the level of the offense based on certain underlying circumstances, for example:

> "(1) Whoever violates this section is guilty of theft.

> "(2) Except as otherwise provided in this division or division (B)(3), (4), (5), (6), (7), or (8) of this section, a violation of this section is petty theft, a misdemeanor of the first degree. If the value of the property or services stolen is five hundred dollars or more and is less than five thousand dollars or if the property stolen is any of the property listed in section 2913.71 of the Revised Code, a violation of this section is theft, a felony of the fifth degree. If the value of the property or services stolen is five thousand dollars or more and is less than one hundred thousand dollars, a violation of this section is grand theft, a felony of the fourth degree. If the value of the property or services stolen is one hundred thousand dollars or more and is less than five hundred thousand dollars, a violation of this section is aggravated theft, a felony of the third degree. If the value of the property or services stolen is five hundred thousand dollars or more and is less than one million dollars, a violation of this section is aggravated theft, a felony of the second degree. If the value of the property or services stolen is one million dollars or more, a violation of this section is aggravated theft of one million dollars or more, a felony of the first degree.

> "***

> "(5) If the property stolen is a motor vehicle, a violation of this section is grand theft of a motor vehicle, a felony of the fourth degree."

R.C. 2945.75 addresses degrees of offenses and states, in relevant part:

> "(A) When the presence of one or more additional elements makes an offense one of more serious degree:

> "(1) The affidavit, complaint, indictment, or information either shall state the degree of the offense which the accused is alleged to have committed, or shall

allege such additional element or elements. Otherwise, such affidavit, complaint, indictment, or information is effective to charge only the least degree of the offense.

(2) A guilty verdict shall state either the degree of the offense of which the offender is found guilty, or that such additional element or elements are present. Otherwise, a guilty verdict constitutes a finding of guilty of the least degree of the offense charged."

**{¶77}** In this case, Horne's indictment charged the offense of grand theft as a felony of the fourth degree and further alleged that the property stolen was a motor vehicle. Accordingly, the indictment properly charged a felony of the fourth degree.

**{¶78}** The guilty verdict for the count alleging grand theft, however, neither states the degree of the offense, nor indicates that any additional element or elements are present to enhance the offense level of the charge. The verdict form does not indicate that the property stolen was a motor vehicle or that the value of the property stolen was five thousand dollars or more and less than one hundred thousand dollars. The Ohio Supreme Court has held that "[p]ursuant to the clear language of R.C. 2945.75, a verdict form signed by a jury must include either the degree of the offense of which the defendant is convicted or a statement that an aggravating element has been found to justify convicting a defendant of a greater degree of a criminal offense." *State v. Pelfrey*, 112 Ohio St.3d 422, 2007-Ohio-256, at syllabus. Accordingly, pursuant to the plain language of R.C. 2945.75(A)(2), the guilty verdict constitutes a finding that Horne is guilty of the least degree of the offense charged, that being a misdemeanor of the first degree. See R.C. 2913.02(B)(2). Horne's seventh assignment of error is sustained.

### III.

**{¶79}** Horne's first, second, third, fourth, fifth, and sixth assignments of error are overruled. His seventh assignment of error is sustained. The judgment of the Summit County

Court of Common Pleas is affirmed, in part, reversed, in part, and the cause remanded for further proceedings consistent with this opinion.

> Judgment affirmed, in part,
> reversed, in part,
> and cause remanded.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Summit, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

DONNA J. CARR
FOR THE COURT

MOORE, J.
CONCURS

DICKINSON, P. J.
CONCURS, SAYING:

{¶80} I concur in the majority's judgment and most of its opinion. It has overruled Mr. Horne's first assignment of error, not based on a determination that the trial court did not err by admitting evidence of his prior conviction, but rather based on its determination that "[u]nder the circumstances, the admission of evidence of the facts underlying Horne's prior conviction, if erroneous, constituted harmless error." I agree with the determination that any error involved in admitting that evidence was harmless. The majority's discussion of the appropriate standard of review regarding admission of other- act evidence, therefore, is dicta. I do not join in that dicta.


APPEARANCES:

SHUBHRA N. AGARWAL, Attorney at Law, for Appellant.

SHERRI BEVAN WALSH, Prosecuting Attorney, and RICHARD S. KASAY, Assistant Prosecuting Attorney, for Appellee.