DECISION AND JOURNAL ENTRY
{¶ 1} Defendant/Appellant, Nicholas P. Gaughan, appeals the denial of his motion to suppress and his conviction for aggravated vehicular assault in the Medina County Court of Common Pleas. We affirm.
 {¶ 2} On July 5, 2007, Defendant was indicted on one count of aggravated vehicular assault in violation of R.C. 2903.08(A)(2)(b), a third-degree felony. It was alleged that in the early evening of June 23, 2007, Defendant hit a minor girl, S.M., with his car while S.M. was riding her bicycle on Crocker Road in Medina County, and then left the scene. S.M. broke her leg and sustained a head injury as a result of being hit. On September 28, 2007, Defendant moved "to suppress all statements * * * which were obtained in violation of [his] Fifth Amendment rights." Specifically, Defendant moved to suppress all statements he made to police officers who questioned him at his home on June 24, 2007. The State did not file a brief in *Page 2 
opposition. On November 8, 2007, the trial court conducted a hearing on the motion to suppress and denied it on November 14, 2007.
 {¶ 3} On January 15, 2008, Defendant filed a motion in limine seeking to exclude any evidence that Defendant consumed alcohol on the day of the offense, which Defendant claims the trial court denied. Defendant argues that the trial court conducted "a hearing prior to trial" and ruled that Defendant's alcohol use "would be relevant to the State's second argument that alcohol was the reason [Defendant] left the scene." The State concedes a hearing was held, but neither party provides the date of the hearing and neither does the docket or the record indicate that a hearing was scheduled or held. Defendant did not provide this Court with the transcript of the hearing.
 {¶ 4} On January 15, 2008, a bench trial commenced and Defendant was convicted of vehicular assault in violation of R.C. 2903.08(A)(2)(b). Defendant timely appealed and raises four assignments of error.
 Assignment of Error I "The trial court erred in denying [Defendant's] motion to suppress by ruling that the Defendant was not in custody during questioning and thus Miranda warnings were not required[.]"
 {¶ 5} In his first assignment of error, Defendant argues that the trial court erred when it determined that "Defendant was not in custody for Miranda purposes when the Defendant was presented with a show of police authority [at least four officers were present], was immediately restricted in his movements, was not allowed to get his shoes from inside his house, was not allowed to get cigarettes or drinks from the house and was ordered where he must sit." *Page 3 
 {¶ 6} We have held that,
 "An appellate court's review of a trial court's ruling on a motion to suppress presents a mixed question of law and fact. The trial court acts as the trier of fact during a suppression hearing, and is therefore best equipped to evaluate the credibility of witnesses and resolve questions of fact. Accordingly, this Court accepts the trial court's findings of fact so long as they are supported by competent, credible evidence. `The trial court's legal conclusions, however, are afforded no deference, but are reviewed de novo.'" (Internal citations omitted.) State v. Catanzarite, 9th Dist. No. 22212, 2005-Ohio-260, at ¶ 6, quoting State v. Russell (1998), 127 Ohio App.3d 414, 416.
 {¶ 7} The trial court found that: (1) three officers came to Defendant's residence on June 24, 2007, in "three different cruisers" at approximately 4:00 p.m.; (2) Defendant voluntarily came outside and into the front yard to speak with Trooper Kline; (3) Trooper Kline notified Defendant that he had struck S.M. who was riding her bicycle and asked Defendant if he had been in the vicinity of the accident; (4) Defendant's "reaction was to fall to his knees and start crying"; (5) Defendant wrote out a statement finishing at approximately 4:45 p.m.; (6) Defendant was not permitted "to go back into the house and his girlfriend, who was also at the house, was not allowed to talk to him"; (7) Defendant's girlfriend was permitted to bring him coffee and cigarettes; (8) Defendant "was not handcuffed, * * * put into a police cruiser, * * * told he was under arrest, or that he couldn't leave the scene"; and (9) "[a]n arrest warrant was obtained" and Defendant "was arrested around 5:30 p.m."
 {¶ 8} After a review of the record, we hold that the trial court's factual determinations are supported by competent, credible evidence. Accordingly, we turn to the trial court's legal conclusions.
 {¶ 9} As we stated in City of North Ridgeville v. Hummel, 9th Dist. No. 04CA008513, 2005-Ohio-595: *Page 4 
 "Pursuant to the Fifth Amendment of the United States Constitution, no person shall be compelled to be a witness against himself. In order to protect a defendant's Fifth Amendment right against self-incrimination, statements resulting from custodial interrogations are admissible only after a showing that law enforcement officers have followed certain procedural safeguards. Miranda v. Arizona (1996), 384 U.S. 436, 444. Specifically, an individual must be advised prior to custodial interrogation that: 1) he has a right to remain silent; 2) any statement he makes may be used as evidence against him, and 3) he has a right to the presence of an attorney. Id." Hummel at ¶ 27.
 {¶ 10} In State v. Antoline, 9th Dist. No. 02CA008100, 2003-Ohio-1130, at ¶ 13, we stated:
 "The duty to provide Miranda warnings is only invoked when both custody and interrogation coincide. `Custody' for purposes of entitlement to Miranda rights exists only where there is a restraint on freedom of movement of the degree associated with a formal arrest. Whether a suspect is in such custody depends on the facts and circumstances of each case. The test to be applied to each case is `whether, under the totality of the circumstances, a "`reasonable person would have believed that he was not free to leave.'"" (Internal citations omitted.) Antoline at ¶ 13, quoting State v. Gumm (1995), 73 Ohio St.3d 413, 429, quoting United States v. Mendenhall (1980), 446 U.S. 544, 554 (plurality opinion).
 {¶ 11} The trial court determined that while the police conduct described above "may have contributed to a coercive atmosphere surrounding the questioning[,]" the questioning was not a custodial interrogation to which the "procedural safeguards identified inMiranda apply[.]" We agree with the trial court.
 {¶ 12} Defendant did not testify at the suppression hearing, but the record demonstrates that Defendant voluntarily spoke with police, was never informed he was under arrest, or not free to leave. Trooper Kline testified that Defendant was never physically restrained in any portion of his home and that Defendant and his girlfriend sat on the porch drinking coffee during questioning. Trooper Kline acknowledged that initially Defendant was not permitted to re-enter his house for safety reasons, but that he was later permitted to do so. Trooper Kline testified that *Page 5 
he did not know if he would have arrested Defendant for failure to comply if Defendant had disobeyed his instruction and re-entered his house to get his shoes.
 {¶ 13} Trooper Kline denied that he knew Defendant was the person responsible for hitting S.M. when he started questioning him because someone other than the Defendant could have driven the vehicle on June 23, 2007.
 {¶ 14} Cheryl Krakora, Defendant's girlfriend, also testified that Defendant was not permitted to re-enter the house and added that there was always a police officer with Defendant. Ms. Krakora agreed, however, that, with the exception of Defendant's attempt to get his shoes, any restrictions on Defendant occurred after the police finished questioning and Defendant had completed his statement. Ms. Krakora also testified that although she was separated from Defendant physically for a period of time, she could see him at all times on the front porch. Ms. Krakora also testified that she never saw police officers grab or hold Defendant at any point until he was cuffed and arrested.
 {¶ 15} That Defendant was temporarily isolated from his girlfriend does not demonstrate that the interrogation was custodial. SeeAntoline at ¶ 15-16, 18 (holding that statements made by a defendant who voluntarily came to the police station with his wife to answer questions and was temporarily separated from his wife should not be suppressed based on a violation of Miranda). Moreover, although this was not a traffic stop, the analysis employed by the United States Supreme Court in Berkemer v. McCarty (1984), 468 U.S. 420, to determine if an interrogation was custodial is helpful. In Berkemer, the United States Supreme Court held that a police officer asking questions at a location visible to passing motorists cannot be fairly characterized as the functional equivalent of a formal arrest because the public nature of such questioning mitigates the danger that such person would be induced "to speak where he would not otherwise do so *Page 6 
freely." Id. at 437-38, quoting Miranda, 384 U.S. at 467. Here, Defendant was on his front porch in the view of the neighborhood and his girlfriend at all times. Moreover, Ms. Krakora testified that "neighbors [were] walking up and down the street trying to hear." Finally, Ms. Krakora testified that although there were several officers at the scene, "a few of them left" and only one officer questioned Defendant at a time, further evidencing that the interrogation was not custodial.
 {¶ 16} Based on the foregoing, under the totality of the circumstances, a reasonable person would have believed he was free to leave and the police officers did not engage in a custodial interrogation of Defendant. See Gumm, 73 Ohio St.3d at 429, citingMendenhall, 446 U.S. at 554. The trial court did not err when it denied Defendant's motion to suppress. Defendant's first assignment of error is overruled.
 Assignment of Error II "The trial court abused its discretion when it admitted into evidence testimony regarding Defendant's consumption of alcohol[.]"
 {¶ 17} In his second assignment of error, Defendant argues that the trial court improperly denied his motion in limine and admitted evidence that Defendant consumed alcohol on the day of the accident. We decline to address the merits of Defendant's argument because he has not preserved this issue for appeal.
 {¶ 18} Ohio law has consistently held that "a motion in limine does not preserve the record on appeal [.]' `An appellate court need not review the propriety of such an order unless the claimed error is preserved by a timely objection when the issue is actually reached during the trial.'" (Emphasis omitted.) State v. Grubb (1986),28 Ohio St.3d 199, 203, quoting State v. White (1982), 6 Ohio App.3d 1. "This is because a motion in limine is `merely a preliminary ruling concerning an evidentiary issue that was anticipated but not yet presented in its full *Page 7 
context.' Consequently, this Court reviews the trial record, not the motion in limine ruling, to determine whether an appellant preserved a contested issue by entering a timely objection at trial." State v.Stoyer, 9th Dist. No. 24010, 2008-Ohio-2964, at ¶ 7, quotingGrubb, 28 Ohio St.3d at 203. In State v. McCarley, 9th Dist. No. 23607,2008-Ohio-552, we stated:
 "The "`failure to timely advise a trial court of possible error, by objection or otherwise, results in a waiver of the issue for purposes of appeal.' Yet, even in the event of a forfeited objection, `[p]lain errors or defects affecting substantial rights may be noticed although they were not brought to the attention of the court[.]' The party claiming error has the burden of arguing plain error on appeal." Id. at ¶ 30, quoting Goldfuss v. Davidson (1997), 79 Ohio St.3d 116, 121, quoting Crim. R. 52(B).
 {¶ 19} Defendant did not object testimony about his alcohol use at trial and has not argued plain error. Nor, has Defendant demonstrated why we should delve into this issue for the first time on appeal. We therefore decline to address it. State v. Meyers, 9th Dist. Nos. 23864, 23903, 2008-Ohio-2528, at ¶ 42, citing In re L.A.B., 9th Dist. No. 23309, 2007-Ohio-1479, at
¶ 19.
 {¶ 20} Defendant's second assignment of error is overruled.
 Assignment of Error III "The trial court erred as there was insufficient evidence presented by the State of Ohio to support the Defendant's conviction of vehicular assault[.]"
 Assignment of Error IV "The trial court's finding of guilty on the charge of vehicular assault was against the manifest weight of the evidence[.]"
 {¶ 21} In his last two assignments of error, Defendant argues that his conviction was not supported by sufficient evidence because there was no evidence he acted recklessly. Defendant also maintains that his conviction is against the manifest weight of the evidence.
 {¶ 22} We review the denial of a Crim. R. 29 motion by assessing the sufficiency of the evidence "to determine whether such evidence, if believed, would convince the average mind of *Page 8 
the defendant's guilt beyond a reasonable doubt." State v. Jenks (1991),61 Ohio St.3d 259, paragraph two of the syllabus. To make this determination, we view the evidence "in the light most favorable to the prosecution." Id.; State v. Feliciano (1996), 115 Ohio App.3d 646, 653. "In essence, sufficiency is a test of adequacy." State v. Thompkins
(1997) 78 Ohio St.3d 380, 386.
 {¶ 23} "While the test for sufficiency requires a determination of whether the [S]tate has met its burden of production at trial, a manifest weight challenge questions whether the [S]tate has met its burden of persuasion." State v. Gulley (Mar. 15, 2000), 9th Dist. No. 19600, at *1, citing Thompkins, 78 Ohio St.3d at 390 (Cook, J., concurring). When a defendant asserts that his conviction is against the manifest weight of the evidence,
 "an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." State v. Otten (1986), 33 Ohio App.3d 339, 340.
This discretionary power may only be invoked in extraordinary circumstances if the evidence presented weighs heavily in favor of the defendant. Id. As sufficient evidence is required to take a case to the [fact-finder], a conclusion that a conviction is supported by the weight of the evidence necessarily includes a finding of sufficiency. State v.Roberts (Sept. 17, 1997), 9th Dist. No. 96CA006462, at *2.
 {¶ 24} Defendant was convicted of aggravated vehicular assault in violation of R.C. 2903.08(A)(2)(b), which states, that "[n]o person, while operating or participating in the operation of a motor vehicle, * * * shall cause serious physical harm to another person * * * recklessly." "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless *Page 9 
indifference to the consequences, he perversely disregards a known risk that such circumstances are likely to exist." R.C. 2901.22(C). Vehicular assault is a third degree felony (rather than a fourth-degree felony) if "in the same course of conduct that resulted in the violation of division (A)(2) of this section, the offender also violated section 4549.02, 4549.021, or 4549.03 of the Revised Code." R.C. 2903.08(C)(2). The indictment alleged that Defendant left the scene of the accident in violation of R.C. 4549.02.
 {¶ 25} Defendant concedes that, if this court, overrules his first assignment of error, it will have been established that he committed a violation of R.C. 4549.02. Thus, based on our resolution of Defendant's first assignment of error, the only issue we are to consider here is whether the evidence supported a conviction for vehicular assault. To that end, Defendant argues that there was no evidence demonstrating that he acted recklessly. At most, Defendant maintains, he acted negligently. Defendant maintains that the only proper evidence before the court related to his mental state was Defendant's admission that he looked down at his IPOD for a moment just prior to the accident. Defendant argues that this Court should not consider his statement to police that he had four to five beers between 2:00 and 4:00 p.m. "last night," for the reasons set forth in his first and second assignment of error. Defendant also maintains that there was evidence demonstrating that he did not drink that afternoon in the form of two defense witnesses who testified as to Defendant's whereabouts on the day of the accident and that they did not observe Defendant drinking any alcohol. Moreover, Defendant asserts, even if the trial court believed that he consumed four to five beers three and one-half hours before the accident, there was no evidence that he was impaired.
 {¶ 26} The judge heard the testimony of five witnesses on behalf of the State and two witnesses on behalf of Defendant. Defendant did not testify. *Page 10 
 {¶ 27} S.M. testified that she was riding her bike on the side of Crocker road during the daytime hours of June 23, 2007. S.M. explained that this portion of the road was straight and flat and that she rode her bike on this road often because she lived on Rolling Brook, a road directly off of Crocker Road. S.M. testified that she heard Defendant's car, turned around and saw it coming towards her, and does not "remember anything after that." S.M. testified that her next memory was waking up "in the ditch." S.M. testified that she injured her head in the accident when she hit the windshield and broke her left leg, which required surgery. During the surgery, rods and screws were placed in her leg and S.M. was not able to walk for three months. S.M. identified various pictures of the scene, her bicycle, and her flip-flop which ended up in the middle of the road because of the accident.
 {¶ 28} Zachary Buchloz testified that he lived on Crocker Road on the day of the incident. Buchloz also testified that he went down and looked at the area where the incident occurred and explained the location of his house relative to where S.M. was hit. Buchloz testified that on that day, he saw a car pull into his neighbor's driveway to turn around. Buchloz explained that he was approximately 500 feet from the vehicle and that the car was coming from the scene of the accident and turned around to go back towards the scene of the accident. Buchloz testified that the car was missing the front passenger fender and that it was being driven by a male person with dark hair. Buchloz explained that he realized the relevance of the car when he saw car parts at the scene of the accident. He did not see if the car stopped or slowed down when it drove back by the scene, but the car did not speed past the scene.
 {¶ 29} Emery Klooz testified that on June 23, 2007, he was driving his truck down Crocker Road and saw S.M. lying in a ditch. He turned his truck around to go back and help and in the process saw a white Buick turn around in a driveway in front of him. Klooz stated *Page 11 
that the car did not stop at the scene. Klooz testified that the top half of S.M. was visible from the road, but acknowledged that his pick-up truck was slightly higher off the road than a normal car.
 {¶ 30} Roseanne Bonds testified that she lived on Crocker Road across from Rolling Brook. Bonds testified that she saw a silver car driving down Crocker Road about 7:00 p.m. on June 23, 2007. She testified that she then saw the car again going the opposite direction and turn on to Rolling Brook. Bond stated that the car was not speeding, weaving, or going left of center, but did have a loud muffler and no hubcaps on the driver's side of the car. Shortly after she saw the car, she saw an ambulance, police car, and fire engine go down the street. She learned the next day that S.M. had been hit by a car, explained Bonds.
 {¶ 31} Bonds testified that based on what she saw the night before and what she had heard about S.M., she decided to look for the silver car. Bonds stated that she saw a car with damage parked in a driveway on Rolling Brook. Bonds explained that the car had a damaged fender and windshield and "appeared to be" the same car she saw the night before. Bonds stated that she wrote down the license plate number and gave it to police.
 {¶ 32} As noted above, Trooper Kline responded to the scene and questioned and arrested Defendant on June 24, 2007. Kline identified various pictures taken at the scene, including the bicycle, a picture of the right front fender that struck S.M. and other car parts, as well as a picture of S.M.'s flip-flop in the road. Kline testified that the bicycle could easily be seen from the road.
 {¶ 33} Kline testified that he ran the license plate number provided by Bonds through the police data base and learned that a silver Buick LeSabre was registered to Defendant and provided an address. Kline testified that he went to the registered address on June 24, 2007, and *Page 12 
saw the vehicle sitting in front of the house. The right side of the windshield, right front fender and marker light were damaged, Kline explained. Kline also noticed "hair embedded in the windshield." Kline testified that the car parts found at the scene of the incident fit Defendant's car like "a puzzle piece[;] * * * they matched up perfectly." Kline noted that the stereo was missing from the car and that it is against the law to listen to an IPOD or any device through headphones while in a motor vehicle for safety reasons. Kline identified various photographs of the car.
 {¶ 34} Kline then identified the written statement Defendant gave to him on June 24, 2007. Kline testified that Defendant told him he had been driving on Crocker Road, looked down at his IPOD, and thought he hit a mailbox. Defendant then indicated that he turned around in a driveway to go back and see what had happened, but did not see anything. Defendant then told him that he went to his girlfriend's house. Kline finally testified that he asked Defendant "[h]ow much did you have to drink last night? And he said, `[f]our to five beers' * * * between 2:00 to 4:00 p.m." Kline explained that he asked Defendant about his alcohol consumption because drinking is the usual reason "why people leave from a crash."
 {¶ 35} Dean Conforte testified that he was Defendant's step-father. Conforte stated that Defendant was with him at home until 4:00 or 4:15 p.m. on June 23, 2007, and that he did see Defendant drinking an alcoholic beverage. Conforte further stated that he did not see any signs that Defendant had been drinking.
 {¶ 36} Anthony Cucuzza testified that he was Defendant's uncle. Cucuzza stated that Defendant came to his home to lift weights at approximately 4:30 p.m. on June 23, 2007 and stayed for approximately two to two and one-half hours. Cucuzza stated that Defendant left *Page 13 
between 6:30 p.m. and 7:00 p.m. Cucuzza testified that he did not see Defendant drink any alcohol while at his house.
 {¶ 37} Based on a review of the record, this Court finds it reasonable that the trial court could have believed the testimony and evidence proffered by the State, found that Defendant acted recklessly, and convicted Defendant of vehicular assault.
 {¶ 38} The evidence is overwhelming that it was Defendant who hit S.M. and caused her serious physical harm. As to whether he acted recklessly, Defendant admitted that he looked down at his IPOD just prior to the accident. There was evidence from which a fact-finder could infer that Defendant was listening to the IPOD using headphones because his car did not have a stereo. Kline testified that using head phones is illegal and a safety issue. While it is arguable whether this alone could be construed as a "heedless indifference to the consequences" of "a known risk[,]" there is additional evidence in this case, which when combined with the foregoing, would allow a fact-finder to determine that Defendant was reckless. See R.C. 2901.22(C).
 {¶ 39} Defendant admitted that he drank four to five beers between 2:00 and 4:00 p.m. Neither Cucuzza's nor Conforte's testimony directly contradicts this admission. Cucuzza did not see Defendant until after 4:00 p.m. and Conforte simply testified that he did not see Defendant drinking or signs of drinking. It is true that Defendant's admission does not demonstrate that he was legally impaired; however, consuming alcohol prior to operating a motor vehicle "may demonstrate `heedless indifference to the consequences' of one's actions and a perverse disregard of a known risk as is required by R.C. 2901.22 to demonstrate reckless conduct." State v. Wamsley (Feb. 2, 2000), 9th Dist. No. 19484, at *4. In Wamsley, this Court affirmed *Page 14 
defendant's conviction for aggravated vehicular manslaughter where the defendant was found not guilty of driving under the influence. We held:
 "Although the jury found [defendant] not guilty of driving under the influence of drugs or alcohol, there was sufficient evidence for the jury to conclude that [defendant's] consumption of alcohol that evening, while not being legally intoxicated, created a situation which was likely to result in an incident such as that which occurred. Moreover, after consuming alcohol, he disregarded the known risk that such alcohol consumption would slow his reflexes, impair his judgment and cause such an incident." Id. at *3.
See, also, State v. Tamburin (2001), 145 Ohio App.3d 774, 780 (noting that for driver's license suspension purposes, while "[a] driver will not be found to be driving recklessly simply because he had consumed some alcohol when he committed an otherwise minor traffic offense that actually threatened no one," a fact-finder can determine such driver was reckless by "examining both the driving at issue and all the circumstances under which it took place[.]"); State v. Coyle (Mar. 15, 2000), 4th Dist. No. 99CA2480 (holding that a fact-finder could determine that defendant acted recklessly when he made a decision to drive "after a binge-like consumption of alcohol for several hours leading up to the accident suggesting] a perverse disregard for the risk of driving drunk" and noting with approval that "the prosecutor focused on the appellant's mere consumption of alcohol as probative of his recklessness.").
 {¶ 40} Defendant acknowledged that he consumed 4-5 beers a few hours before the accident. Defendant then disregarded the known risk of alcohol consumption on reflexes and judgment and made the decision to drive his vehicle. Defendant took his eyes off the road to adjust his IPOD and there is evidence by which a fact-finder could find that Defendant listened to his IPOD through headphones, which is against Ohio law. Under the totality of the circumstances and considering these facts in a light most favorable to the prosecution, we hold that the fact-finder could conclude that Defendant acted recklessly. Defendant's conviction was *Page 15 
supported by sufficient evidence and was not against the manifest weight of the evidence. Defendant's third and fourth assignments of error are overruled.
 {¶ 41} Each of Defendant's assignments of error is overruled and the judgment of the Medina County Court of Common Pleas is affirmed.
Judgment affirmed.
The Court finds that there were reasonable grounds for this appeal.
We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App. R. 27.
Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App. R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App. R. 30.
Costs taxed to Appellant.
 MOORE, P. J. WHITMORE, J. CONCUR *Page 1