[Cite as *State v. Schmidt*, 2012-Ohio-537.]

| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
|---|---|---|
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF MEDINA | ) | |

| STATE OF OHIO | C.A. No. 10CA0071-M |
|---|---|
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| FERENCE SCHMIDT | COURT OF COMMON PLEAS COUNTY OF MEDINA, OHIO |
| Appellant | CASE No. 09-CR-0365 |

DECISION AND JOURNAL ENTRY

Dated: February 13, 2012

BELFANCE, Presiding Judge.

{¶1} Ference Schmidt appeals his convictions for aggravated vehicular homicide and aggravated vehicular assault. For the reasons set forth below, we affirm.

I.

{¶2} Mr. Schmidt bought a 2008 Dodge Charger on October 1, 2008. On October 10, 2008, while driving the Charger on U.S. 224 in Medina County, Mr. Schmidt broadsided a minivan being driven by Lawrence Erb, killing Mr. Erb and his wife, Betty Erb, who was a passenger in the van. Prior to the collision, several witnesses observed Mr. Schmidt's vehicle as it drove along the road through multiple intersections along the roadway. Five seconds prior to the impact, Mr. Schmidt was traveling approximately 124 mph. The posted speed limit was 60 mph. At the time of actual impact, Mr. Schmidt's car was travelling approximately 75 mph. Patrick Dario, a passenger in Mr. Schmidt's vehicle, was seriously injured in the accident.

{¶3} Mr. Schmidt waived his right to a jury trial and the matter proceeded to trial before the bench. The trial court found Mr. Schmidt guilty of two counts of aggravated vehicular homicide and one count of aggravated vehicular assault. It sentenced Mr. Schmidt to an aggregate prison term of eight years.

{¶4} Mr. Schmidt has appealed, raising three assignments of error for review. For ease of discussion, we have rearranged his assignments of error.

## II.

THE TRIAL COURT ERRED WHEN IT FAILED TO GRANT APPELLANT'S TIMELY AND RENEWED CRIM.R.[ ]29 MOTION, WHERE THE STATE FAILED TO PRODUCE EVIDENCE OF RECKLESSNESS, AN ELEMENT OF THE CRIMES CHARGED, ALL IN VIOLATION OF APPELLANT'S RIGHTS TO DUE PROCESS AS SECURED BY U.S. CONSTITUTION, AMENDMENT V AND OHIO CONSTITUTION, ARTICLE 1, [SECTION] 10.

{¶5} Mr. Schmidt argues that the trial court should have granted his Crim.R. 29 motion at the end of the State's case because the State had failed to demonstrate that Mr. Schmidt recklessly caused the injuries of Mr. Dario and the deaths of Mr. Erb and Ms. Erb. We disagree.

{¶6} A review of a Crim.R. 29 motion is a review of the sufficiency of the evidence. *State v. Frashuer*, 9th Dist. No. 24769, 2010-Ohio-634, ¶ 33. "Whether a conviction is supported by sufficient evidence is a question of law that this Court reviews de novo." *State v. Williams,* 9th Dist. No. 24731, 2009–Ohio–6955, ¶ 18, citing *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). The relevant inquiry is whether the prosecution has met its burden of production by presenting sufficient evidence to sustain a conviction. *Thompkins,* 78 Ohio St.3d at 390 (Cook, J., concurring). In reviewing the evidence, we do not evaluate credibility and we make all reasonable inferences in favor of the State. *State v. Jenks*, 61 Ohio St.3d 259, 273 (1991). The State's evidence is sufficient if it allows the trier of fact to reasonably conclude that the essential elements of the crime were proven beyond a reasonable doubt. *Id.*

{¶7} Mr. Schmidt was convicted of violating R.C 2903.06(A)(2)(a), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause the death of another * * * [r]ecklessly[.]" The trial court also found that Mr. Schmidt had violated R.C. 2903.08(A)(2)(b), which provides that "[n]o person, while operating or participating in the operation of a motor vehicle, * * * shall cause serious physical harm to another person * * * [r]ecklessly." "A person acts recklessly when, with heedless indifference to the consequences, he perversely disregards a known risk that his conduct is likely to cause a certain result or is likely to be of a certain nature." R.C. 2901.22(C).

{¶8} Mr. Schmidt does not dispute that he drove the Dodge Charger that struck the Erbs' van, that he caused the deaths of Mr. Erb and Ms. Erb, or that he caused the injuries to Mr. Dario. He also concedes that the evidence presented demonstrates that he was travelling at 124 mph seconds prior to the collision. Instead, Mr. Schmidt suggests that there was insufficient evidence to demonstrate that he behaved recklessly because evidence of excessive speed alone is not sufficient to demonstrate recklessness. He argues that his conduct was negligent which would support a conviction for vehicular homicide rather than aggravated vehicular homicide.

{¶9} Recklessness may be inferred from a combination of excessive speed and the surrounding circumstances. *State v. Thomas*, 12th Dist. No. CA93-03-046, 1994 WL 266546, *3 (June 13, 1994); *see also State v. Moore*, 2nd Dist. No. 22904, 2009-Ohio-3766, ¶ 8 ("A driver's grossly excessive speed, particularly when combined with other factors, will support a finding of recklessness."). Mr. Schmidt essentially argues that his conviction was based upon speed alone and that there were no other facts or circumstances to support a finding of recklessness. However, the State did not merely present evidence that Mr. Schmidt was travelling at an excessive speed. James Strosnider testified that he and a group of friends were caravanning out

to the Dragway 42 racetrack after work. He was riding his motorcycle west along U.S. 224 when the Charger driven by Mr. Schmidt came up behind his motorcycle. According to Mr. Strosnider, the Charger "was inches from [his] rear tire." Mr. Schmidt "switched lanes and attempted to cut [Mr. Strosnider] off[,]" forcing Mr. Strosnider to brake to avoid a collision. At a light, Mr. Strosnider pulled up alongside a Camaro that was being driven by his friend Blaise Clark and complained about Mr. Schmidt's driving. He then got separated from the Camaro and the Charger because of traffic. Mr. Strosnider testified that he later rode past the wreck, but did not realize what had happened at the time. Mr. Strosnider testified that, by the time he drove past the accident, it was dark. A few miles up the road, he saw that Mr. Clark's Camaro had pulled off the road at a diner and he stopped there as well. After he stopped, one of the friends who had been going to Dragway 42 with Mr. Strosnider and Mr. Clark arrived and informed them about the accident.

{¶10} David Canfield testified that he was driving west on U.S. 224 when a Camaro and a car, which he later identified as Mr. Schmidt's Charger, passed him at a high rate of speed. According to Mr. Canfield, the Charger cut over into his lane and then cut back behind the Camaro, "barely miss[ing] the Mustang" that was in front of Mr. Canfield. Mr. Canfield testified that the Charger appeared to then cut off the Mustang, again almost hitting it. Then, the Charger and the Camaro took off at a high rate of speed.

{¶11} According to James Letzelter, he was driving his Ford Mustang west along U.S. 224 at dusk when a Camaro came up behind him and flashed its lights. Mr. Letzelter pulled over to allow the Camaro to pass and noticed that a Dodge Charger was following it close behind. Mr. Letzelter testified that, after the Charger passed him, it pulled into his lane. Then, according to Mr. Letzelter, the Camaro and the Charger "just kind of lined up together * * * and really just

took off and left me." He testified that "they took off so hard that I could smell the exhaust from their vehicles." He estimated that the two vehicles were travelling at over 100 mph. Mr. Letzelter testified that he lost sight of the cars as they went around a curve in the road, but that he saw the dust and debris kick up from the collision.

{¶12} Trooper Christopher Jester testified about the data recorded by the air bag module of Mr. Schmidt's Charger regarding the accident. Generally, an air bag module stores data, such as speed, braking, and throttle, for five seconds preceding impact. According to Trooper Jester, Mr. Schmidt's air bag module indicated that the Charger was travelling at 124 mph five seconds prior to hitting the Erbs' van. Trooper Jester testified that the data from the air bag module indicated that Mr. Schmidt began breaking 2.8 seconds prior to impact and was only able to reduce his speed to 75 mph at the time of impact.

{¶13} Multiple witnesses for the State testified that signs indicated that the speed limit was 60 mph and that there was an intersection ahead. Mr. Letzelter also testified that Mr. Schmidt was speeding as he rounded a curve in the road. The State submitted photographs of the highway in question that showed the signs and the curve. It is also undisputed that U.S. 224 is not a limited access road in the area in which Mr. Schmidt was driving. In other words, traffic could ingress and egress at intersections along the road.

{¶14} The State presented evidence that demonstrated that Mr. Schmidt was travelling at dusk at more than twice the posted speed limit. In addition to Mr. Schmidt's excessive speed, the State presented evidence that the road had multiple intersections, stoplights, warning signs, a curve, and traffic crossing it. Mr. Strosnider, Mr. Letzelter, and Mr. Canfield all testified that the accident occurred at dusk, a time when visibility is further compromised. The State also presented evidence that Mr. Schmidt was driving in an unsafe manner as he proceeded along the

road. Mr. Strosnider testified that Mr. Schmidt drove his Charger within inches of the rear wheel of Mr. Strosnider's motorcycle. Mr. Letzelter and Mr. Canfield testified that the Camaro and the Charger both drove at a high rate of speed through other traffic, and Mr. Canfield testified that Mr. Schmidt nearly hit Mr. Letzelter's car on two separate occasions. Trooper Jester testified that Mr. Schmidt's rate of speed was 181 feet per second. Thus, the trier of fact could conclude that Mr. Schmidt's ability to react to traffic even far ahead of him was greatly compromised given his high rate of speed. Given Mr. Schmidt's manner of driving, the time of the evening, the presence of cross streets and traffic devices, Mr. Schmidt's speed, and the presence of other traffic, we conclude that, when viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could find beyond a reasonable doubt that Mr. Smith, while operating his vehicle caused the death of the Erbs and caused serious harm to Mr. Dario recklessly.

{¶15} Mr. Schmidt's first assignment of error is overruled.

ASSIGNMENT OF ERROR III

THE VERDICT IN THIS CASE WAS AGAINST THE MANIFEST WEIGHT OF THE EVIDENCE AND VIOLATED APPELLANT'S FIFTH AND FOURTEENTH AMENDMENTS (sic) RIGHTS PURSUANT TO THE UNITED STATES CONSTITUTION AND ARTICLE I, [SECTION] 10 OF THE OHIO CONSTITUTION.

{¶16} In Mr. Schmidt's third assignment of error, he argues that his convictions are against the manifest weight of the evidence because three witnesses testified that Mr. Schmidt was not racing the Camaro.

{¶17} In reviewing a challenge to the weight of the evidence, the appellate court "must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of

fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *State v. Otten*, 33 Ohio App.3d 339, 340 (9th Dist.1986).

{¶18} In his defense, Mr. Schmidt called Mr. Dario, Eric Cline, a passenger in the Camaro, and Michael Wiggins, a passenger in the Charger. In contrast to the State's witnesses who perceived that Mr. Schmidt was racing the Camaro prior to the crash, Mr. Schmidt's witnesses testified that the vehicles were not racing. Although the trial court was not required to believe their testimony, the argument misses the point. The central issue is not the characterization of Mr. Schmidt's driving as racing, rather, the issue is the *manner* that Mr. Schmidt was driving along the road. In other words, even if Mr. Schmidt was not actually racing the Camaro, the evidence presented indicated that Mr. Schmidt was in the right driving lane, lined up with the Camaro and took off suddenly at a high rate of speed which quickly increased to over 100 mph under circumstances where other traffic was present and the road contained access points for other cross traffic. Mr. Letzelter and Mr. Canfield both testified that the Camaro and the Charger took off together. While Mr. Cline denied that the Camaro and the Charger raced, he did testify that he observed the Charger weaving in and out of traffic and that the Charger, after pulling up alongside the Camaro, "basically the [Charger] just accelerate[d] off * * * pretty heavily * * * like the car had nitrous." In addition, Mr. Schmidt's witnesses testified that Mr. Schmidt had driven to Dragway 42 on numerous prior occasions. Thus, Mr. Schmidt was familiar with 224.

{¶19} Based upon all of the evidence presented, the trier of fact could have reasonably found that Mr. Schmidt was traveling over 100 mph and more than twice the posted speed limit on a road that he knew had multiple intersections, traffic lights, warning signs, and crossing

traffic. Furthermore, Mr. Strosnider and Mr. Canfield testified that Mr. Schmidt was engaged in risky driving behavior as they both described near-accidents involving Mr. Schmidt immediately prior to Mr. Schmidt crashing his Charger into the side of the Erbs' van, killing them and injuring Mr. Dario. Mr. Canfield and Mr. Letzelter both testified that the Charger and the Camaro engaged in what appeared to be racing behavior and, regardless of the testimony of Mr. Cline, Mr. Dario, and Mr. Wiggins, the trial court could have reasonably found that the testimony of Mr. Canfield and Mr. Letzelter was more credible than the other witnesses.

{¶20} After a thorough review of the record, we cannot say that this is the exceptional case where the trier of fact lost its way and committed a miscarriage of justice when it found Mr. Schmidt guilty of aggravated vehicular assault and aggravated vehicular homicide. His third assignment of error is overruled.

## ASSIGNMENT OF ERROR II

THE TRIAL COURT ERRED IN ALLOWING THE STATE TO INTRODUCE EVIDENCE OF OTHER ACTS IN VIOLATION OF OHIO EVID.R.[ ]404[(B)] DENYING APPELLANT A FAIR TRIAL AND DUE PROCESS OF LAW IN VIOLATION OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION AND ARTICLE I, [SECTION] 10 OF THE OHIO CONSTITUTION.

{¶21} Mr. Schmidt argues that the trial court erred when it allowed the State to procure testimony from his witnesses that they had observed Mr. Schmidt engage in street racing on two separate occasions. According to Mr. Schmidt, he was prejudiced by the admission of the testimony because the evidence of reckless behavior was not overwhelming.

{¶22} Evid.R. 404(B) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." However, such evidence is admissible "for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." *Id.* The State

contends that the testimony was admissible because it demonstrated Mr. Schmidt's knowledge of his speed as well as potential dangers associated with it. Although we question the propriety of admitting the evidence, we nonetheless conclude that its admission did not prejudice Mr. Schmidt and any error was harmless. *See* Crim.R. 52(A).

{¶23} Even where the admission of evidence is erroneous, the error is harmless where there is overwhelming evidence of the defendant's guilt. *State v. Horne*, 9th Dist. No. 25238, 2011-Ohio-1901, ¶ 14, quoting *State v. Williams*, 6 Ohio St.3d 281 (1983), paragraph six of the syllabus. The testimony at issue was admitted while the State was cross-examining Mr. Dario and Mr. Wiggins both of whom described Mr. Schmidt's prior participation in street racing. However, it is apparent that Mr. Schmidt's convictions did not hinge on demonstrating the presence of street racing. In addition, as detailed above, there was overwhelming direct evidence presented that Mr. Schmidt while operating his vehicle caused the deaths of Mr. Erb and Mrs. Erb and caused serious physical harm to Mr. Dario recklessly. Therefore, even assuming, without deciding, that the trial court erred in allowing the State to elicit the testimony on cross-examination from Mr. Dario and Mr. Wiggins, any error was harmless. *See Williams* at paragraph six of the syllabus; Crim.R. 52(A).

{¶24} Mr. Schmidt's second assignment of error is overruled.

III.

{¶25} Mr. Schmidt's assignments of error are overruled. The judgment of the Medina County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Medina, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(E). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

_____
EVE V. BELFANCE
FOR THE COURT


MOORE, J.
CONCURS

CARR, J.
CONCURS IN JUDGMENT ONLY


APPEARANCES:

LAWRENCE J. WHITNEY, Attorney at Law, for Appellant.

DEAN HOLMAN, Prosecuting Attorney, and MATTHEW KERN, Assistant Prosecuting Attorney, for Appellee.