[Cite as *State v. Wolfe*, 2018-Ohio-124.]

| | | |
|---|---|---|
| STATE OF OHIO | ) | IN THE COURT OF APPEALS |
| | )ss: | NINTH JUDICIAL DISTRICT |
| COUNTY OF LORAIN | ) | |

| | |
|---|---|
| STATE OF OHIO | C.A. No.      16CA011027 |
| Appellee | |
| v. | APPEAL FROM JUDGMENT ENTERED IN THE |
| CAMERON J. WOLFE | COURT OF COMMON PLEAS COUNTY OF LORAIN, OHIO |
| Appellant | CASE No.      16CR093093 |

DECISION AND JOURNAL ENTRY

Dated: January 16, 2018

SCHAFER, Judge.

{¶1}  Defendant-Appellant, Cameron Wolfe, appeals his conviction for reckless vehicular assault in the Lorain County Court of Common Pleas.  For the reasons that follow, we affirm.

I.

{¶2}  On December 28, 2015, Wolfe was driving T.K.'s pickup truck with  T.K. riding in the front passenger seat and Dean B. in a rear passenger seat.  At approximately 7:05 p.m., Wolfe lost control of the vehicle and crashed, severely injuring T.K.

{¶3}  The Lorain County Grand Jury subsequently indicted Wolfe on the following charges: (I) vehicular assault in violation of R.C. 2903.08(A)(2)(b), a felony of the third degree; (II) tampering with evidence in violation of R.C. 2921.12(A)(1), a felony of the third degree; (III) failing to stop after an accident resulting in serious harm to a person in violation of R.C. 4549.02(A), a fifth degree felony; (IV) receiving stolen property in violation of R.C. 2913.51(A),

a first degree misdemeanor; (V) driving under suspension in violation of R.C. 4510.11(A), a first degree misdemeanor; (VI) willful or wanton disregard of safety on highways, in violation of R.C. 4511.20(A), a minor misdemeanor; and (VII) operating a vehicle without reasonable control in violation of R.C. 4511.202(A), a minor misdemeanor. Wolfe pleaded not guilty at his arraignment and the matter proceeded through the pretrial process.

{¶4} Wolfe eventually withdrew his not guilty pleas as to counts three, five, and seven, and subsequently entered a plea of guilty to those counts. Wolfe waived his right to a jury trial and the remaining counts were tried to the bench.

{¶5} At the close of the State's case in chief, the trial court granted Wolfe's motion for acquittal as to count four, but denied the motion as to count two. The trial court ultimately found Wolfe guilty of counts one, two and six and sentenced Wolfe according to law.

{¶6} Wolfe filed this timely appeal, raising one assignment of error for our review.

II.

**Assignment of Error**

**The trial court erred by finding [Wolfe] guilty of reckless vehicular assault and willful or wanton disregard for safety on highways.**

{¶7} In his sole assignment of error, Wolfe contends that his conviction for reckless vehicular assault was based on insufficient evidence. We disagree.

{¶8} A challenge to the sufficiency of the evidence to support a criminal conviction presents a question of law. *State v. Thompkins*, 78 Ohio St.3d 380, 386 (1997). Upon review, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1991), paragraph two of the syllabus. Although we conduct the review de novo, "we neither resolve evidentiary conflicts nor

assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570, C-120751, 2013-Ohio-4775, ¶ 33.

{¶9} This matter implicates Wolfe's conviction for vehicular assault. Pursuant to R.C. 2903.08(A)(2)(b), "[n]o person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * [r]ecklessly." R.C. 2901.22(C) states:

> A person acts recklessly when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that the person's conduct is likely to cause a certain result or is likely to be of a certain nature. A person is reckless with respect to circumstances when, with heedless indifference to the consequences, the person disregards a substantial and unjustifiable risk that such circumstances are likely to exist.

On appeal, Wolfe "does not dispute the facts as presented to the trial court" or that his operation of a motor vehicle caused serious physical harm to T.K. Rather, Wolfe contends that evidence was insufficient to show that he acted recklessly in causing T.K.'s injuries and that his actions amounted to mere negligence. Specifically, Wolfe argues that the evidence only shows that he drove at an excessive speed and accelerated in an attempt to prevent another vehicle from passing him in a no passing zone, and that he failed to perceive a risk by accelerating.

{¶10} Nonetheless, this Court has recognized that "[r]ecklessness may be inferred from a combination of excessive speed and the surrounding circumstances." *State v. Schmidt*, 9th Dist. Medina No. 10CA0071-M, 2012-Ohio-537, ¶ 9, citing *State v. Thomas*, 12th Dist. Butler No. CA93-03-046, 1994 Ohio App. LEXIS 2566, *7 (June 13, 1994). Contrary to Wolfe's assertion that he was merely driving in excess of the speed limit, the evidence in this case shows that, at the time of the accident, Wolfe was exceeding the speed limit by more than 30 miles per hour, while traveling on a two-lane road, in the dark, with wet and rainy conditions. Further, Wolfe was operating the truck with a suspended driver's license, after consuming

alcohol. Considering his grossly excessive speed in combination with these other factors, there is sufficient evidence to support a finding of recklessness. *See State v. Moore*, 2d Dist. Montgomery No. 22904, 2009-Ohio-3766, ¶ 8 ("A driver's grossly excessive speed, particularly when combined with other factors, will support a finding of recklessness.")

{¶11} A more detailed review of the testimony at trial shows as follows. Prior to the accident, Wolfe and a group of people were gathered at T.K.'s house. The group included Wolfe, T.K., Dean, Trevor S., Justine L., and Cassandra K. T.K. testified that when they left his house, he stated that he didn't want to drive because he had been drinking and he "had too much to lose" and in response, Wolfe stated he would drive because he "ain't got s**t to lose". Although T.K. stated he did not see Wolfe drinking alcohol before agreeing to drive, Cassandra K. testified that both Wolfe and T.K. were "pretty intoxicated" and that she had seen Wolfe drinking. Justine testified that although she did not see anyone drinking, both Wolfe and T.K. smelled of alcohol.

{¶12} Wolfe, in the truck, along with passengers T.K. and Dean, then led a small caravan of vehicles. Trevor drove the vehicle directly behind Wolfe with Justine as a passenger and Cassandra drove the third and final vehicle in line. At trial, Wolfe stipulated that he was driving with a suspended license at the time of the accident. T.K. testified that prior to the accident, Wolfe was driving "recklessly" and at a high rate of speed despite dark and rainy conditions. Cassandra testified that Wolfe and Trevor were driving "pretty fast" and that she observed their vehicles "kind of jumping hills, jumping the tracks". Justine also stated that "everyone" was driving fast and estimated that Trevor was driving 60 miles per hour. Cassandra described "jumping hills" as "you go up and get momentum, and you don't hit the top of the hill, you jump over it". She further testified that she witnessed Trevor pass Wolfe and then Wolfe

pass Trevor. Cassandra eventually fell behind and estimated that Wolfe and Trevor were driving "about 80, 90" despite the 50 mile per hour speed limit.

{¶13} T.K. testified that minutes before the accident a car pulled in front of Wolfe after he stopped at a stop sign. Wolfe then accelerated and "went past [the car] down in the ditch" on the left side of the road way. Consequently, T.K. told Wolfe he "better slow down", but that that Wolfe continued at a "high rate of speed". In contrast, Trevor testified that when Wolfe passed the car, Wolfe "[h]it the grass a little bit and then just went right back into his lane after he passed the car." However, Trevor described Wolfe's driving as "reckless and careless." Both T.K. and Trevor stated that in their opinion, Wolfe was driving too fast for the conditions of the road. Trevor estimated Wolfe was driving about 75 miles per hour. Trevor further testified that he later considered passing Wolfe, but after turning on his left turn signal and "peeking" around the truck, he changed his mind and moved back behind the truck. Trevor stated that shortly thereafter, Wolfe accelerated and between 20 and 30 seconds after that, Wolfe lost control of the truck. Trevor stated that he believed Wolfe's speed caused the accident.

{¶14} When describing the accident, T.K. testified that the truck "hydroplaned", went into a ditch, and hit a telephone pole. Trevor testified that he saw the truck start to hydroplane, then saw the rear end swerve left and it looked like the truck was going to the right and then "it caught, and as soon as it caught, it just grabbed and went left and went into the ditch." Justine testified that she recalled the truck driving straight and then suddenly the bed of the truck swung right and the rest of the truck to the left and the truck hit a telephone pole on the left side of the road. Trevor testified that there was "wood flying all over the place," so he hit the brakes on his own vehicle and as a result, hydroplaned into the guardrail. Justine also stated that as a result of the truck hitting the telephone pole, there was "wood flying everywhere" and when Trevor

attempted to slow down, his vehicle slid into a guardrail on the right side of the road. Cassandra testified that she was pretty far behind Wolfe and Trevor at the time of the accident, but that she "heard a loud noise" and "saw sparks in the ground".

{¶15} T.K. lost consciousness, but testified that when he came to, he was sitting on the back passenger door window with Wolfe, Dean, and a television on top of him. Although T.K. vaguely remembered exiting the vehicle, he could not remember many details from after the accident. Cassandra testified that as she approached the accident she saw Wolfe get out of the truck and then help T.K. get out of the truck. She further stated that the truck was in a ditch in a wooded area in front of a bridge and that Trevor's vehicle went into a guardrail. Cassandra then left the scene of the accident and took Dean to his mother's home. Cassandra testified that when she left, Wolfe was still at the scene of the accident. Justine testified that although she did not see Wolfe leave the scene of the accident, "one second he was there, one second he was gone."

{¶16} Sgt. Hoffman of the Ohio State Highway Patrol testified that he was dispatched to the scene of the accident. He stated that at the time of the accident, the temperature in the area was about 40 degrees with moderate rainfall. He stated that it was very dark outside and that the roads were wet with some areas of pooling. When he arrived at the scene, several emergency vehicles were already on scene and he observed Trevor's vehicle crashed head on into the guardrail. Sgt. Hoffman stated that a Wellington police officer informed him that two occupants of the crashed truck had fled on foot. He then observed a white pickup truck crashed in a ditch on its passenger side with the back window shattered.

{¶17} Sgt. Hoffman subsequently began photographing the crash scene and questioning people on scene in an attempt to figure out who had been involved in the crash. Emergency personnel indicated to Sgt. Hoffman that one of the occupants of the truck was inside an

ambulance and about to leave the scene. Sgt. Hoffman spoke to the individual inside the ambulance, who identified himself as T.K. and identified the driver of the truck as Wolfe. Sgt. Hoffman next spoke to Trevor, who gave a statement, identifying himself as the driver of the vehicle that hit the guardrail and Wolfe as the driver of the truck. Sgt. Hoffman further testified that after speaking to T.K. and Trevor, he, a K-9 officer, and about three other officers searched for the occupants of the vehicle that had fled the scene on foot, but to no avail. Prior to leaving the scene of the accident, Sgt. Hoffman received word that Dean had appeared at the Wellington Police Department to turn himself in with regard to the crash. Sgt. Hoffman testified that he later spoke to Dean at the police station.

{¶18} Based on his investigation, Sgt. Hoffman determined that the truck was the first vehicle in the line of travel, traveling west, and that it crested a hill at a high rate of speed. Sgt. Hoffman testified that he could not determine speed based on the crash. However, based on the scene, the damage to the truck and the distance it traveled after going off the road, and the fact that the truck lost control, he opined that Wolfe was traveling at a high rate of speed when he crested the hill and that started the crash in motion. He elaborated that "when [Wolfe] crested that hill at the high rate of speed, he lost traction of the tires. When the traction loss happens, the truck will start to yaw, or swing in one direction or the other from the back end first." Sgt. Hoffman opined with certainty that the truck swayed to the left because the first point of impact with the utility pole was to the bed of the truck.

{¶19} Lt. Kinn, a Crash Reconstruction Commander with the Ohio State Highway Patrol, testified as an expert in the use of the event data recorder. Lt. Kinn testified that an event data recorder is the "black box" inside a vehicle that records information from inside the car for the safety of the occupants. In this case, Lt. Kinn analyzed the event data recorder information

retrieved from the truck involved in the crash and retrieved a report showing there was a locked frontal event, a locked side event, a locked rollover event, and a fuel cutoff event. Lt. Kinn explained that the "locked events" show "deployment level events that would have caused the airbags to come out." He also testified that where the crash occurred there is a 55 miles per hour speed limit, however, the report showed the truck was traveling at 86.2 miles per hour five seconds before the first recorded "locked event" and that the vehicle was maintaining its speed rather than accelerating or decelerating. The truck's speed then decreased incrementally to 62.8 miles per hour before the safety systems were commanded. As the truck's speed was decreasing, the report showed that the anti-lock brake system was engaged, suggesting to Lt. Kinn "a hard brake application" about one second before the first "locked event". Lt. Kinn estimated the truck was traveling at 70 to 73 miles per hour when it went off the road. Lt. Kinn further stated that, based on the data, he did not believe the truck hydroplaned because the truck's speed remained consistent and "[h]ad the vehicle hydroplaned, we would have had a wheel spin up, and there would have been a dramatic jump in those speeds." Finally, Lt. Kinn stated that in his opinion, the truck's speed was excessive and reckless for the wet and dark conditions of the road at the time of the accident and he was "surprised that there was not a fatal injury sustained * * * due to the speed that was involved in the crash."

{¶20} Trooper Kaess of the Ohio State Highway Patrol testified that he interviewed Wolfe six days after the accident and that Wolfe made a voluntary written statement regarding his involvement. In that statement, Wolfe admitted to driving the truck at the time of the crash and that he did not have a valid license. Wolfe then stated that it was raining and when Trevor attempted to pass the truck, Wolfe accelerated and then the truck hydroplaned and crashed. Trooper Kaess further testified that during the interview, he asked Wolfe follow-up questions

related to his statement. Trooper Kaess stated that Wolfe related to him that he had consumed six to seven Budweiser beers prior to the accident and that consumption had impaired his judgment.

{¶21} Accordingly, the evidence in this case shows that at the time of the accident, Wolfe was: (1) driving with a suspended license; (2) driving after drinking alcohol; and (3) driving at a rate of speed more than 30 miles per hour over the posted speed limit despite the wet, dark, and rainy conditions. Upon review of the evidence in a light most favorable to the State, we conclude that there was sufficient evidence for the trier of fact to find Wolfe's conduct reckless. *See Schmidt*, 2012-Ohio-537 at ¶ 9; *see also State v. Gaughan*, 9th Dist. Medina No. 08CA0010-M, 2008-Ohio-5528, ¶ 40 (concluding that the State presented sufficient evidence of recklessness where a defendant admitted to drinking 4-5 beers a few hours before an accident, admitted to taking his eyes off the road to adjust an iPod, and there was evidence by which a fact-finder could find the defendant was listening to the iPod through headphones); *State v. Wamsley*, 9th Dist. Summit No. 19484, 2000 Ohio App. LEXIS 272, * 8 (Feb. 2, 2000) (finding sufficient evidence for the jury to conclude that the defendant's consumption of alcohol, while not being legally intoxicated, created a situation which was likely to result in an accident); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008-Ohio-1744, ¶ 21 (stating that "by driving while under the influence of alcohol, [the defendant] disregarded a substantial risk that his actions would injure another.")

{¶22} Therefore, Wolfe's sole assignment of error is overruled.

III.

{¶23} Wolfe's assignment of error is overruled. The judgment of the Lorain County Court of Common Pleas is affirmed.

Judgment affirmed.

———

There were reasonable grounds for this appeal.

We order that a special mandate issue out of this Court, directing the Court of Common Pleas, County of Lorain, State of Ohio, to carry this judgment into execution. A certified copy of this journal entry shall constitute the mandate, pursuant to App.R. 27.

Immediately upon the filing hereof, this document shall constitute the journal entry of judgment, and it shall be file stamped by the Clerk of the Court of Appeals at which time the period for review shall begin to run. App.R. 22(C). The Clerk of the Court of Appeals is instructed to mail a notice of entry of this judgment to the parties and to make a notation of the mailing in the docket, pursuant to App.R. 30.

Costs taxed to Appellant.

JULIE A. SCHAFER
FOR THE COURT

HENSAL, P. J.
CARR, J.
CONCUR.

APPEARANCES:

STEPHAN P. HANUDEL, Attorney at Law, for Appellant.

DENNIS P. WILL, Prosecuting Attorney, and NATASHA RUIZ GUERRIERI, Assistant Prosecuting Attorney, for Appellee.